## EAST COAST PAVING & SEALCOATING, INC.

v.

## NORTH ALLEGHENY SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2014.

Decided March 6, 2015.

David Raves, Pittsburgh, for appellant.

BEFORE: DAN PELLEGRINI, President Judge, RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge LEAVITT.

North Allegheny School District (School District) appeals an order of the Allegheny County Court of Common Pleas (trial court) entering a judgment in favor of East Coast Paving & Sealcoating, Inc. (East Coast) for paving work it did for the School District. The trial court awarded East Coast $356,694.38 in damages, interest and attorney's fees. The School District contends that because it paid East Coast all that was owed under the parties' contract, the trial court erred. We affirm in part and reverse and remand in part.

## Background

East Coast was the successful bidder on the School District's paving project at two schools. East Coast's bid of $437,041.46 did not include soft spot repair work.[1] However, its bid stated that it would do this work at the price of $135 per cubic yard. On April 29, 2009, the School District accepted East Coast's bid, but rejected the offer to do soft spot repair work as unnecessary.

East Coast began the paving project on July 15, 2009. The following day, Mark Murphy, an inspector for Jeff Zell Consultants, which had been hired by the School District to oversee the project, identified soft spots in the area designated for paving. Murphy notified the School District's Director of Facilities, Robert Gaertner, and the project's architect, Chambers Design Associates, of the need for soft spot repairs. Gaertner directed East Coast to repair 1,681.37 cubic yards of soft spots, and it began the soft spot repair work on July 27, 2009.

East Coast sent two invoices to the School District for the soft spot repair work: one on July 31, 2009, and another on August 10, 2009. *See* Exhibits H, I; Reproduced Record at 367a–369a (R.R. ——). Together, the invoices totaled $80,716.90. On August 24, 2009, Barry Miles, East Coast's controller, and Todd Chambers, on behalf of the architect, signed a change order for $87,282.64. The change order, which was prepared by Chambers, covered three items:

PV–01—Remove and replace approximately 1900 sf. of unacceptable subgrade material . . . $80856.90

PV–02—Provide a 32' × 20' × 8' concrete pad at Marshall Elementary School . . . $4925.74

PV–03—Curb repair at Bradford Woods . . . $1500.00

R.R. 370a.[2] The parties agree that the PV–01 item related to East Coast's July

---

1. "Soft spots" occur when the area under the paving is 'soft.' When this occurs the ground is replaced with stone and compacted before the paving takes place." East Coast Brief at 2.

2. "PV" stands for "partial value." R.R. 507a.

31, 2009, and August 10, 2009, invoices for the soft spot repair work.[3]

On August 25, 2009, East Coast submitted an application for payment to Chambers, stating that East Coast had earned $466,477.11 for the work performed up to that point. Chambers, on behalf of the School District, authorized payment to East Coast of $450,558.62, thereby reducing East Coast's payment application.

On August 26, 2009, East Coast submitted an invoice for $226,984.95 to cover the soft spot repair work authorized by the School District. East Coast arrived at $226,984.95 by multiplying $135 per cubic yard times 1,681.37 yards of soft spots it repaired. This was East Coast's original bid price to do the soft spot repair work. The invoice of $226,984.95 included the $80,856.90 already agreed to in the change order of August 24, 2009.[4]

On August 27, 2009, the School District paid East Coast $450,558.62 on the August 25, 2009, application for payment, which left a balance of $72,065. The School District withheld $72,065 because it was not satisfied with the quality of East Coast's work. The School District also refused to pay the August 26, 2009, invoice on the remaining soft spot repair work. The School District's stated reason for its refusal was that the August 24, 2009, change order charge of $80,856.90 for "PV–01" covered the entire soft spot repair work.

On August 3, 2010, the School District sent East Coast a letter explaining in what ways it was dissatisfied with East Coast's performance:

The [School] District still has in retention $72,065 of the outstanding contract balance for this project. In the previous correspondence from Mr. Chambers he reviewed our concerns with regards to deficiencies in the thickness of the paving that East Coast Paving provided at these facilities. As you are aware from the testing that was done at Bradford Woods Elementary School and Marshall Middle School, the paving that was installed was not in compliance with the specifications for this contract. In addition, at this time you still have not provided the necessary bonds for the project, you have not addressed the replacement of the funnel ball that was damaged during the course of your work at Marshall Elementary School and you have not provided reimbursement to the [School] District for the restriping of the bus parking lot area at Marshall Middle School.

R.R. 180a. The School District agreed to pay $35,376.68 of the total owed, leaving a balance of $36,688.32. The correspondence further stated:

Finally, the [School] District also still has unresolved notifications from your suppliers and sub-contractors of outstanding payments for this project, which include Donegal Construction ($19,031.22), Hanson Aggregates ($71,680.70) and American Bulk Commodities ($21,435.45). Because you failed to provide the required bonds, if the [School] District does not receive notification from these entities that payment have [sic] been resolved with East Coast Paving, no further payments will be made. R.R. 181a.

On January 25, 2012, East Coast filed a complaint against the School District seek-

---

3. No explanation is given for the discrepancy between $80,856.90 and $80,716.90. *See* R.R. 649a–650a.

4. This left approximately $146,000 owing for the soft spot repair work. Chambers did not respond to East Coast's invoice with the preparation of a change order, as he did with the two earlier invoices, Exhibits H and I, relating to the soft spot repair work.

ing damages in the amount of $219,896.47, as well as interest and attorney's fees under the Contractor and Subcontractor Payment Act (CASPA).[5] Attached to the complaint was the written contract between East Coast and the School District. In its answer, the School District raised a new matter, *i.e.*, East Coast's incomplete and defective work. A non-jury trial was held on January 16 and 21, 2014, at which both parties presented evidence.

During trial, East Coast moved to amend its complaint to add claims under the Prompt Pay Act[6] as an alternative to the complaint's CASPA claims. The School District opposed the motion on the grounds that it was barred by the statute of limitations. The trial court denied East Coast's motion to amend.

At the conclusion of the trial, the trial court directed the parties to file proposed findings of fact and conclusions of law. The trial court adopted East Coast's proposed findings and conclusions and rejected those of the School District. In doing so, the trial court found that East Coast's July 31, 2009, and August 10, 2009, invoices were for a portion of the soft spot repair work and not the total. The trial court relied on three pieces of evidence to support this finding. First, neither invoice contained charges for 2A limestone and AASHTO # 1 stone, which East Coast purchased to do the soft spot repairs.

Second, Richard Rylott, a civil engineer and expert witness for East Coast, testified that, based on his review of East Coast's weigh slips,[7] East Coast ordered 3,354 tons of 2A limestone beyond what was required under the original terms of the contract. Third, Barry Miles, controller for East Coast, testified that the "PV" in "PV–01" stands for "partial value." R.R. 507a.

On March 12, 2014, the trial court entered a verdict in favor of East Coast and awarded it $365,694.38. The trial court reached this number by adding $116,545.12 in statutory interest and $20,252.79 in attorney's fees to the outstanding balance of $219,896.47, as authorized by CASPA. The trial court entered judgment on April 14, 2014, and the School District appealed.

On appeal,[8] the School District raises several assignments of error by the trial court. First, the School District argues that the trial court erred in concluding that the School District breached its contract with East Coast. Second, the School District asserts that the trial court erred in holding that East Coast's performance of the soft spot repair work did not require separate approval by the School Board. Third, the School District argues that the trial court erred in holding that CASPA applies to a contractor's contract claim against a school district. Fourth, the School District contends that

---

5. Act of February 17, 1994, P.L. 73, *as amended*, 73 P.S. §§ 501–516.

6. The Prompt Pay Act, 62 Pa.C.S. §§ 3931–3939, is the common name of Subchapter D of the Pennsylvania Procurement Code, 62 Pa.C.S. §§ 101–4509.

7. Rylott testified that weigh slips are documents truck drivers are required by the Department of Transportation to carry when transporting heavy materials, such as rocks, to and from construction sites.

8. When reviewing a non-jury verdict, our standard of review is limited to determining whether the competent evidence supports the trial court's findings of fact and whether the trial court committed an error of law. *James Corporation v. North Allegheny School District*, 938 A.2d 474, 483 n. 6 (Pa.Cmwlth. 2007). This Court must treat the trial court's findings of fact the same as this Court would treat a jury's findings of fact. *Id.* This Court views the evidence in the light most favorable to the party that prevailed before the trial court. *Id.*

the trial court abused its discretion by awarding speculative damages. Finally, the School District asserts that the trial court abused its discretion by adopting all of East Coast's proposed findings of fact and conclusions of law instead of drafting its own. We address the School District's issues *seriatim*.

## Breach of Contract

The School District contends that the trial court erred in two ways by concluding that it breached its contract with East Coast.[9] First, the School District argues that a written change order had to be executed in order for it to have a duty to pay East Coast for its soft spot repair work. Specifically, the School District contends the trial court ignored the following terms of the contract:

> 7.1.1. Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive, or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.
>
> 7.1.2. A Change Order shall be based upon agreement among the Owner, Contractor and Architect. . . .
>
> 7.2. A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect. . . .

R.R. 335a. Second, the School District contends that, even if the School District had to pay East Coast for the soft spot repairs, it did not have to pay for the work until other conditions to payment set forth in the contract were satisfied.

With respect to the School District's argument that a change order was a necessary condition to payment, our holding in *James Corp. v. North Allegheny School District*, 938 A.2d 474 (Pa.Cmwlth. 2007), is binding precedent. Notably, it involved the School District as the defendant and the very same contract language invoked here by the School District.

In *James*, significant delays in the construction project occurred by no fault of the contractor. For example, the contractor was forced to excavate one area by hand because the School District was unable to determine the precise location of a duct that would have been damaged by use of a back hoe. Likewise, the contractor was forced to relocate a fence that was not listed in the contract as a required task. Finally, the contractor was forced to provide a sub-contractor with dumpsters because the School District refused to provide them. In all instances, the School District authorized the contractor to undertake these additional tasks and after they were completed, the contractor submitted invoices for payment. However, the School District refused to pay the invoices because the contractor had not submitted a written change order for approval before performing the additional work.

In refusing payment, the School District relied on Article 7.1.1 of the contract in question, which is identical to Article 7.1.1 of the contract at issue here. *James*, 938 A.2d at 487 n. 11. We rejected its claim that a written change order was a condition precedent to the contractor's right to be paid for work it did at the directive of the School District. We explained:

> We agree with [the contractor] that despite its failure to formally request change orders, the trial court properly

9. The School District also argues that the trial court erred in holding that East Coast could recover damages for unjust enrichment. Because East Coast prevailed on its breach of contract action, we need not consider this issue.

awarded [the contractor] monies to compensate for the additional work for two reasons. First, [the contractor's] bid consultant testified [the School District] demanded the [work].

Second, [the contractor's] vice-president of operations testified [the contractor] submitted change orders for the dumpsters and fence relocation. While the contract contemplates change orders to precede the work, [the contractor] nevertheless performed the work at [the School District's] direction. [The contractor] considered [the School District's] verbal directions binding, performed the work, and then followed through with written documentation.

[The School District] knew of these additional costs as the work involved also impacted the Project delays; thus, it was not materially prejudiced by [the contractor's] failure to submit notice of its claims in timely fashion.

938 A.2d at 487 (internal citations omitted). In short, the School District could not demand that the contractor perform extra work, receive written notice that the contractor was performing the extra work it demanded, and then refuse payment on the basis of Section 7.1.1. By their conduct, the parties both demonstrated their understanding of Section 7.1.1 as not requiring an executed change order in advance of the contractor doing the work.

The facts here cannot be distinguished from those in *James*. First, Robert Gaertner, the School District's Director of Facilities, testified that he had authority to authorize additional work and that he directed East Coast to perform soft spot repair work. East Coast's controller, Barry Miles, confirmed that East Coast did the soft spot repair work because Gaertner ordered it to be done.

Second, Miles testified that when he submitted the August 26, 2009, invoice to Chambers, the project's architect, he expected that Chambers would prepare a change order for the remainder of the soft spot repair work, as he had done previously. Inexplicably, Chambers did not prepare a change order.

Third, East Coast's soft spot repair work was documented in writing. The School District regularly received inspection reports prepared and filed by the School District's consultants. The inspection report for July 20, 2009, specifically documented the agreement between the School District, East Coast, and the architect authorizing soft spot repair work. R.R. 719a; *see also* R.R. 242a. The July 27, 2009, inspection report documented the beginning of the soft spot repair work. R.R. 721a; *see also* R.R. 745a.

The School District does not discuss *James* or attempt to distinguish it. It does not claim that it did not know that the soft spot repair work was being done. It simply argues that it did not have to reimburse East Coast for its purchase of an additional 3,000 tons of extra 2A limestone covered in the August 26, 2009, invoice because it did not execute a change order for the additional stone. However, the School District demanded the soft spot repair work, which required East Coast to make this purchase. The School District knew what the soft spot repair work involved, and it received written reports on its progress. It cannot, after the fact, rely upon Section 7.1.1 to refuse to execute a change order or pay for the materials it obligated East Coast to purchase. As in *James,* Section 7.1.1 does not relieve the School District of its obligation to pay for the work and materials it demanded of East Coast.

■ Alternatively, the School District argues that the trial court erred in finding that it breached the contract because other

conditions precedent to payment stated in the contract were not satisfied. Article 9.10.2 of the contract provided that the School District did not have to make final payment until East Coast submitted to the architect

> (1) an affidavit that payrolls, bills for materials and equipment and other indebtedness connected with the Work for which the Owner of the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner....

R.R. 340a. The School District argues that because the trial court did not find that each one of these conditions were met, its judgment lacks a foundation.

The School District does not claim that East Coast did not satisfy these above-listed conditions precedent; rather, it contends that the trial court did not make a specific finding of their satisfaction. We disagree. The trial court did not make a reference to each of the above-listed conditions, but it made the general finding that East Coast "satisfied its obligations under the contract." Trial Court op. at 3. This wording is sufficient to support the finding that East Coast complied with Section 9.10.2 of the contract.

Accordingly, we conclude that the trial court did not err in allowing East Coast to recover for breach of contract.

### Authorization to Perform Soft Spot Repairs

■ In its second issue, the School District argues that the trial court erred in concluding that the School District authorized East Coast to do the soft spot repair work. The School District contends that a change to a contract "must be approved by affirmative vote of the school board members and the approv[al] must be reflected in the minutes or record as provided by Section 508 of the Public School Code, 24 P.S. § 5–508." School District Brief at 15. According to the School District, the School Board did not approve the soft spot repair work.

The School District made this argument in *James,* and we rejected it there. We explained:

> We reject [the School District's] argument [that] Section 508 of The Public School Code of 1929, Act of March 10, 1929, P.L. 30, *as amended,* 24 P.S. §§ 5–508 (requiring school board approval for increases or decreased to indebtedness), bars [the contractor's] claim for payment of additional work. Testimony established [the School District] considered the work part of the contract; thus, further school board approval was unnecessary.

*James,* 938 A.2d at 478 n. 12. Moreover, we explained:

> [The School District], having directed [the contractor] to perform the additional work asserting it was required by contract, cannot now disavow liability for costs incurred by claiming [the contrac-

tor] did not have written authorization [from the School Board].

*Id.* at 487.

The record established that the School District required East Coast to do the soft spot repair work. The School District does not argue that the soft spot repairs were not necessary. As in *James,* it was not necessary for the School Board to approve, specifically, the soft spot repair work. The School Board approved the paving project and its completion by East Coast, and that is all that was required by Section 508.

### CASPA and the Prompt Pay Act

The School District raises two assignments of error by the trial court in awarding East Coast interest and attorney's fees under CASPA. First, the School District argues that CASPA does not apply to a contractor's claim against a government agency such as a school district. It argues that such a claim is governed by the Prompt Pay Act, 62 Pa.C.S. §§ 3931–3939. Second, the School District contends that East Coast's claims for interest and attorney's fees were untimely because the two-year statute of limitations on actions upon a statute for a civil penalty had run. We begin with the applicability of CASPA to East Coast's action.

In holding the School District liable for penalties and attorney's fees under CASPA, the trial court relied on *Scandale Associated Builders & Engineers, Ltd. v. Bell Justice Facilities Corp.,* 455 F.Supp.2d. 271 (M.D.Pa.2006). In *Scandale,* the United States District Court considered whether the Federal Bureau of Prisons, a federal agency, could be considered an "Owner" for purposes of CASPA. Section 2 of CASPA states, in relevant part, as follows:

"Owner." A person who has an interest in the real property that is improved and who ordered the improvement to be made. The term includes successors in interest of the owner and agents of the owner acting with their authority.

"Person." A corporation, partnership, business trust, other association, estate, trust, foundation or a natural individual.

73 P.S. § 502. CASPA does not expressly include, or exclude, a government agency from its definition of "owner."

The District Court found that the Federal Bureau of Prisons could be an "owner" under CASPA for three reasons. First, the statutory definition of "owner" did not specifically exclude a federal agency. Second, the statutory definition of "owner" was broad in scope. Third, the contractor, which had rights under CASPA, would be "bereft of a remedy" were it not allowed to exercise its rights under CASPA. *Scandale,* 455 F.Supp.2d at 281. In sum, the District Court held that it was not willing to hold at the summary judgment phase of the litigation that a federal agency was not an "owner" under CASPA.

The School District argues that *Scandale* is inapposite. First, the issue in *Scandale* was whether the contractor's CASPA claim should be dismissed at the summary judgment phase. Second, *Scandale* does not stand for the proposition that all government agencies, state and federal, are subject to CASPA. East Coast asks this Court to adopt *Scandale's* analysis, as the trial court did, and points out that *Scandale* did not address whether a contractor doing work for a state or local agency has rights under CASPA, the Prompt Pay Act or both. We conclude that *Scandale* is not very useful.

Under Pennsylvania's rules of statutory construction, statutes relating to "the same persons or things or to the same class of persons or things," must be "construed together, if possible, as one statute." 1

Pa.C.S. § 1932. The statutory construction question presented here is whether a school district can be held accountable to its contractor under either CASPA or the Prompt Pay Act or both. This is a question of first impression.

■ Both CASPA and the Prompt Pay Act protect contractors and subcontractors against not being paid promptly for the work and materials they provide on a construction project. *See Imperial Excavating and Paving, LLC v. Rizzetto Construction Management, Inc.*, 935 A.2d 557, 563 (Pa.Super.2007) (stating that purpose of CASPA is "to protect contractors and subcontractors by providing guidelines for prompt payment in construction projects."). Similarly, this Court has stated that the purpose of the Prompt Pay Act is to " 'level the playing field' between government agencies and contractors." *A. Scott Enterprises, Inc. v. City of Allentown*, 102 A.3d 1060, 1070 (Pa.Cmwlth. 2014).

Besides having similar purposes, both acts contain similar provisions. Both require payment for work done. 62 Pa.C.S. § 3931(a); Section 4 of CASPA, 73 P.S. § 504. Both set forth a schedule for payment even where the written contract does not address that subject. 62 Pa.C.S. § 3932(b); Section 5 of CASPA, 73 P.S. § 505(c). Both allow withholding payment to a contractor or to a subcontractor so long as certain notice requirements are satisfied. 62 Pa.C.S. § 3934(b); Section 6 of CASPA, 73 P.S. § 506(b).

However, CASPA and the Prompt Pay Act differ in significant ways. For example, the acts differ in scope. Section 4 of CASPA states:

Performance by a contractor or a subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to *payment from the party with whom the contractor or subcontractor has contracted.*

73 P.S. § 504 (emphasis added). Conversely, the Prompt Pay Act provides:

Performance by a contractor in accordance with the provisions of a contract shall entitle the contractor to *payment by the government agency.*

62 Pa.C.S. § 3931(a) (emphasis added). CASPA is broader in scope because it applies to any "party," *i.e.,* "owner" of real property, that owes a payment to a contractor. By contrast, the Prompt Pay Act applies only where the payment is owed by a government agency.

Section 12 of CASPA mandates an award of penalties and attorney's fees against an owner who fails to comply with the act.[10] It states:

(a) Penalty for failure to comply with act.—If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court *shall* award, in addition to all other damages due, *a penalty equal to 1% per month of the amount that was wrongfully withheld.* An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or sub-

---

**10.** The trial court awarded East Coast attorney's fees and interest in the amount of 1% per month. East Coast's proposed findings of fact and conclusions of law, which were adopted in full by the trial court, cited Section 12(a) of CASPA as the basis for the addition of 1% interest to the contract damages. *See* R.R. 121a.

contractor is seeking to recover payment.

(b) Award of attorney fee and expenses.—Notwithstanding any agreement to the contrary, *the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee* in an amount to be determined by the court or arbitrator, together with expenses.

73 P.S. § 512 (emphasis added). By contrast, Section 3935 of the Prompt Pay Act states as follows:

(a) Penalty.—If arbitration or a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of this subchapter, the arbitrator, the Board of Claims or the court *may* award, in addition to all other damages due, *a penalty equal to 1% per month of the amount that was withheld in bad faith.* An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

(b) Attorney fees.—Notwithstanding any agreement to the contrary, the

prevailing party in any proceeding to recover any payment under this subchapter *may be awarded a reasonable attorney fee* in an amount to be determined by the Board of Claims, court or arbitrator, together with expenses, *if it is determined that the government agency, contractor or subcontractor acted in bad faith.* An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa.C.S. § 3935 (emphasis added).

In summary, each statute provides for penalty and attorney fees but the trigger under each statute differs. CASPA mandates the award of penalty and attorney fees upon a showing that a payment was "wrongfully withheld" and the contractor has "substantially" prevailed in litigation. 73 P.S. § 512. The Prompt Pay Act mandates a penalty and attorney fees where the government agency has "acted in bad faith." 62 Pa.C.S. § 3935. *A. Scott Enterprises, Inc.*, 102 A.3d at 1070 ("We conclude that Section 3935 of the Procurement Code requires the imposition of attorney's fees and the statutory penalty upon a jury's finding of bad faith.").[11]

■ It cannot be that a school district's conduct towards its contractor is governed by both statutes at the option of the contractor. For if the contracts of government agencies were governed by both CASPA and the Prompt Pay Act, contractors would always invoke CASPA, which sets a lower threshold for the imposition of

11. In addition to penalties and attorney's fees, each statute provides for the imposition of interest where a progress or final payment is not timely made. Section 5 of CASPA provides for "interest at the rate of 1% per month or fraction of a month on the balance that is at the time due and owing." 73 P.S. § 505 (emphasis added). Section 3932 of the

Prompt Pay Act provides for "interest on the amount due, and the interest shall be computed at the rate determined by the Secretary of Revenue for interest payments on overdue taxes or the refund of taxes...." 62 Pa.C.S. § 3932. The contract between East Coast and the School District provided for progress payments.

a penalty and attorney fees. This would render the Prompt Pay Act meaningless. We conclude that the Prompt Pay Act, not CASPA, governs construction contracts between a government agency, such as a school district, and a contractor.[12] Accordingly, the trial court erred in applying the remedies set forth in CASPA to this case.

■ The School District argues that the trial court erred by not applying a two-year statute of limitations to East Coast's CASPA claim. This issue is important because the trial court denied East Coast's motion to add a count to the complaint under the Prompt Pay Act, presumably because it accepted the School District's position that the motion was untimely under the two-year statute of limitations for civil penalties and forfeitures in Section 5524(5) of the Judicial Code, 42 Pa.C.S. § 5524(5). Section 5524(5) states:

> The following actions and proceedings must be commenced within two years:
>
> *   *   *
>
> (5) An action upon a statute for a civil penalty or forfeiture.

42 Pa.C.S. § 5524(5). We disagree that 42 Pa.C.S. § 5524(5) applies either to CASPA or to the Prompt Pay Act. Indeed, a two-year statute of limitations would be illogical for a statute intended to reimburse a contractor for attorney fees incurred in litigation that itself was subject to a four-

year statute of limitations, *i.e.*, a breach of contract action.

■ Generally, civil penalties are sanctions imposed by a government agency for violation of a statute, regulation or permit. *See, e.g.*, Section 605(a) of the statute commonly known as the Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended*, 35 P.S. § 691.605(a) ("[F]or a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violation."). The civil penalty, such as that imposed by the Clean Streams Law is a function of the violator's culpability; it is strictly punitive. The penalty is placed into a public treasury or fund. A statutory "penalty," however, is not always subject to the two-year statute of limitations in 42 Pa.C.S. § 5524(5). In *Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 568 Pa. 601, 798 A.2d 1277, 1283–84 (2002), our Supreme Court considered claim for liquidated damages established in the Judicial Code to compensate private debtors for harmful effects caused by a creditor's failure to note the satisfaction of judgment on the public record. The Supreme Court held the liquidated damages were not subject to the two-year statute of limitations because the penalty was remedial in nature. Because the statute establishing the remedy did not specify a statute of limitations, the residual six-year statute of limitations set forth in Section

---

12. Though this Court and our Supreme Court have not spoken on this subject prior to now, other courts have reached the same conclusion. *See Cecil Township Municipal Authority v. North American Specialty Surety Company*, 836 F.Supp.2d. 367 (W.D.Pa.2011); *Mastercraft Woodworking Co. v. Jim Lagana Plumbing & Heating Company*, 9 Pa. D. & C. 5th 251 (2009). Moreover, the Pennsylvania Supreme Court has granted the Third Circuit's Petition for Certification of a Question of

State Law in order to answer whether, under Pennsylvania law, CASPA "appl[ies] to a project where the owner is a governmental entity." *Clipper Pipe & Service, Inc. v. Ohio Casualty Insurance Co.*, —— Pa. ——, 105 A.3d 657 (2014). Further, this Court has applied the Prompt Pay Act to school district projects. *See Boro Construction v. Ridley School District*, 992 A.2d 208 (Pa.Cmwlth.2010); *James*, 938 A.2d 474.

5527(b) of the Judicial Code applied.[13] As was explained in *Cubler v. TruMark Financial Credit Union,* 83 A.3d 235, 241 (Pa.Super.2013), a statutory penalty that provides a "formula that is expressly linked to the aggrieved party's *injury,* not to the degree of the offending party's culpability," is compensatory in nature and not a civil penalty governed by the two-year statute of limitations.

The penalty and attorney fees provisions of the Prompt Pay Act, like the statutes at issue in *Cubler* and *Pantuso Motors,* are remedial and compensatory, not purely punitive. East Coast's claim for penalty and attorney fees was founded upon CASPA and the Prompt Pay Act. Neither statute has established its own statute of limitations. Accordingly, the residual six-year statute of limitations set forth in Section 5527(b) of the Judicial Code applies. It states:

> (b) Other civil action or proceeding.-Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

42 Pa.C.S. § 5527(b). In short, East Coast's claim for interest and attorney fees under the Prompt Pay Act was not untimely as presented.

Because the trial court erroneously denied East Coast's motion to amend its complaint to include a Prompt Pay Act count, the question of whether the School District is liable for interest, penalties, and attorney's fees under the Prompt Pay Act must be remanded to the trial court. Only if the trial court finds that the School District withheld payment in bad faith

must it award a penalty and attorney fees at the rate established by the Prompt Pay Act; interest may be awarded on a late payment on a progress payment.

## Speculative Damages

██ The School District argues that the trial court abused its discretion by awarding damages that were imprecise and speculative. The School District contends that the trial court should not have measured the damages by the $135 per cubic yard figure that East Coast used in its bid because that amount was rejected by the School District and exceeded the cost of stone used by East Coast.

██ The law does not require mathematical precision when calculating damages. *James,* 938 A.2d at 494. "The law simply requires the claim be supported by a reasonable basis for the calculation." *Id.* "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Id.* at 495.

The trial court determined that East Coast earned $219,896.47 for the soft spot repairs based on the August 26, 2009, invoice. East Coast arrived at this number by multiplying the cubic yardage of the repairs times the amount it charges clients for soft spot repairs. The trial court concluded that $135 per cubic yard "was reasonable and customary," and the School District does not dispute the size of the area repaired. Trial Court Opinion at 2. The School District's assertion that the trial court's award was speculative lacks merit.

---

**13.** The Supreme Court also held that the four-year statute of limitations for "[a]n action upon a contract," 42 Pa.C.S. § 5525(a), was not applicable because the plaintiff's claim was founded upon the statute itself and not upon a contract.

### Adoption of East Coast's Findings and Conclusions

In its final assignment of error, the School District contends that the trial court erred by adopting East Coast's proposed findings of fact and conclusions of law and rejecting the School District's. The School District cites numerous findings of fact that it argues have no basis in the record and states that "[t]hese erroneous conclusions of law drastically change the outcome of this matter." School District's Brief at 27.

A trial court's findings of fact will not be overturned if supported by competent evidence. *James,* 938 A.2d at 483 n. 6. Weight and credibility determinations are for the fact-finder to determine, not this Court. *Id.* at 496 n. 21. The School District would have this Court replace the trial court's witness evaluations with our own. This we cannot do.

Moreover, there is nothing untoward about a trial court adopting a party's proposed findings of fact and conclusion of law as its own. *Commonwealth ex rel. Bloomsburg State College by Nossen v. Porter,* 148 Pa.Cmwlth. 188, 610 A.2d 516, 518 (1992). "Nothing in the [Rules of Civil Procedure], however, preclude[ ] a court from adopting those findings and conclusions proposed by a party. In fact, the contrary is implied." *Id.* (quoting *Sotak v. Nitschke,* 303 Pa.Super. 361, 449 A.2d 729, 733 (1982)). So long as substantial evidence exists to support the trial court's decision, a trial court's blanket adoption of proposed findings of fact is acceptable. *See Reinstadtler v. Workmen's Compensation Appeal Board (Egler, Anstandig, Garrett & Riley),* 143 Pa.Cmwlth. 429, 599 A.2d 266, 267 (1991). Here, the School District does not assert that the findings are not supported by substantial evidence. Therefore, the trial court did not abuse its discretion by adopting all of East Coast's findings of fact and conclusions of law.

### Conclusion

We affirm the trial court's holding that the School District breached its contract with East Coast and the trial court's award of damages. We conclude, however, that the trial court erred in applying the additional remedies provided in CASPA. Accordingly, we reverse that part of the award and remand for further proceedings to determine what, if any, remedies are available to the School District under the Prompt Payment Act. The trial court's order is affirmed in all other respects.

### *ORDER*

AND NOW, this 6th day of March, 2015, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter dated April 14, 2014, is REVERSED insofar as it awarded East Coast Paving & Sealcoating, Inc. (East Coast) interest and attorney's fees under the Contractor and Subcontractor Payment Act, Act of February 17, 1994, P.L. 73, *as amended,* 73 P.S. §§ 501–515, and this matter is REMANDED for further proceedings on whether East Coast is entitled to interest, penalty or attorney fees under Subchapter D of the Commonwealth Procurement Code, 62 Pa.C.S. §§ 101–4509. The order is AFFIRMED in all other respects.

Jurisdiction relinquished.