J-S11018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.E. PONTZ SONS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PURCELL CONSTRUCTION COMPANY | |
| Appellant | No. 1269 MDA 2014 |

Appeal from the Judgment Entered August 26, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): 11-03550

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 01, 2015**

Purcell Construction Company ("Purcell") appeals from the judgment entered on August 26, 2014, in the Court of Common Pleas of Lancaster County.  Following a bench trial, the court entered judgment in favor of C.E. Pontz Sons, Inc. ("C.E. Pontz") in the amount of $11,247.10, plus interest and costs.  On appeal, Purcell raises the following three arguments:  (1) did the trial court err in finding the contract was modified orally; (2) did the court err in failing to find C.E. Pontz breached the contract; and (3) did the court err in failing to award attorney's fees to Purcell.  Based on the following, we affirm.

The trial court made the following findings of fact:

1. On or about June 9, 2006, [C.E. Pontz] and [Purcell] entered into a Subcontract Agreement regarding

landscaping work at Twin Valley High School, Elverson, Pennsylvania.

2. The original contract price for the subcontract was $3,500 with [C.E. Pontz] to provide seeding and lawn restoration work.

3. The provisions of the contract were clear that all change orders must be in writing, approved by [Purcell], and, in addition, approval for payment must be given by the Owner (Twin Valley High School) and Architect (Schrader Group Architecture). These change orders were to be submitted prior to work done.

4. Mrs. Ober, project coordinator for [C.E. Pontz], and Mr. Kashatus, site director for [Purcell], had many discussions regarding work done on site in addition to the work included in the $3,500 contract price.

5. Much work appears to have been done by [C.E. Pontz] above that value, yet [C.E. Pontz] failed to submit any change orders until well after they completed their portion of the job; months later submitting a letter request for additional payments.

6. [C.E. Pontz] received all information regarding the pre-bid specifications well in advance of the bid, and the grade of the land was clearly visible from even a cursory glance at the site.

7. [C.E. Pontz] clearly did work beyond the scope of the initial contract, and [Purcell] admits same.

8. [Purcell] submitted [C.E. Pontz]'s claim to the Owner and Architect allowing for an additional payment to be approved of $13,455.56. Said payment was made in full to [C.E. Pontz] per the AIA Application for Payment Forms.

9.  [C.E. Pontz] then submitted a payment application on or about January 18, 2008, marked "Final," which showed a balance due under the Agreement of zero (0) dollars.[1]

10. [Purcell] received no additional communications or formal claims for any amounts due under the Agreement or any added charge order requests from [C.E. Pontz] for nearly two years and nine months after the "Final" payment and zero balance mentioned hereinabove.

Trial Court Opinion, 8/28/2013, at 1-2.

C.E. Pontz filed a complaint on March 30, 2011, and amended complaint on May 13, 2011, raising causes of action for breach of contract and unjust enrichment. Purcell filed an answer on July 22, 2011. The matter went to arbitration, and on May 12, 2012, an award was entered in for favor of C.E. Pontz in the amount of $28,611.77.

Purcell then appealed the arbitration award. A one-day bench trial took place on April 29, 2013. Subsequently, on August 28, 2013, the court entered the following order:

> AND NOW this 28th day of August 2013, upon consideration of the testimony and evidence presented at trial and in written closing arguments, findings of facts, and conclusions of law, as submitted by the parties, it is hereby ORDERED AND DECREED that judgment is entered for [C.E. Pontz] in the additional amount of $11,247.10 plus interest and costs. There is no award for attorneys' fees for either party in this matter.

---

[1] The zero balance referenced in the trial court's findings of fact was on the application for payment of the $16,955.56 amount that Purcell submitted to the school district. **See** Defendant's Exhibit 2, Application and Certificate for Payment, 1/18/2006.

Order, 8/28/2013. In support of its conclusion, the court made the following conclusions of law:

> [C.E. Pontz] clearly failed to file timely and appropriate work change orders and [Purcell] clearly observed without objection added work being done by [C.E. Pontz] at the work site for which [Purcell] could not have known would be approved for payment by Owner or Architect. Under 42 Pa.C.S. § 2503(9), attorney's fees may be awarded to a party when the opposing party has commenced the matter in bad faith. Although the Court finds both Ms. Ober and Mr. Kashatus could have, no doubt, supervised better, the Court finds no bad faith on the part of the actual parties in this case in bringing the action. Because the Court finds no breach of contract or breach of duty of good faith in bringing the action, no attorney's fees are awarded.
>
> [Purcell] did not waive the non-written modification requirements; however, "when an owner requests a builder to do extra work, promises to pay for it and watches it performed knowing that it is not authorized in writing, he cannot refuse to pay on the ground that there was no written change order." (Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 244 A.2d 10, 16 (Pa. 1968) (citing Focht v. Rosenbaum, 176 Pa. 14, 34 A. 1001 (1876)). The original contract between the parties included 50,000 square feet of fine grading, soil supplements, and seeding, in exchange for which [C.E. Pontz] would receive $3,500.00. The contract between [C.E. Pontz] and [Purcell] allowed for changes only if in writing and approved in advance of the work done.
>
> [Purcell]'s owner clearly conceded that [C.E. Pontz] did an extensive amount of work beyond the written contract. [Purcell]'s project manager, on site almost daily, admitted, "I had authorized CE Pontz to perform these additional items." This included 78,000 square feet of erosion control, dumping loads and removal of rock, additional seeding, soil prep and fertilizer for more than the 50,000 square feet, and costs associated with sod and stone removal at the Fitness Building entrance and chain link fence area.
>
> [Purcell]'s project manager further emphasized that he did not realize the work "costs would be this much." Rather than accepting the figures presented by [C.E. Pontz], he required

- 4 -

more specific detail in his letter dated September 18, 2007. His letter did not indicate that he had received acceptance or rejection from the school district or architect, but that he needed information in order to pass the costs onto the School District or others.

The October 23, 2007 letter from [C.E. Pontz]'s project manager outlines those specific areas as requested by [Purcell]'s project manager. Based on this information and [Purcell]'s response to [C.E. Pontz]'s letter, Areas 1, 2, 4, and 5 were approved and paid by [Purcell] to [C.E. Pontz].

Issues of Area 3, the softball fields, front slope, and extras were denied but purportedly sent on to the School District for approval though at a reduced square footage from [C.E. Pontz]'s demand. Because the work in Area 3 was clearly done at request of [Purcell], for a total of $8093.00, there was an oral modification of the requirement to have the change order in advance. (Universal Builders, Inc. v. Moon Motor Lodge, Inc., 430 Pa. 550, 244 A.2d 10, 16 (Pa. 1968) (citing Focht v. Rosenbaum, 176 Pa. 14, 34 A. 1001 (1876)). In addition to the work in Area 3, the two ball fields and the sod were completed at the request of [Purcell], totaling $1372.00 and $1782.10 respectively. These costs are clearly owed to [C.E. Pontz] by [Purcell]. There is a significant difference in the square footage of seeding (164,000 square feet according to [C.E. Pontz] and 75,940 square feet according to [Purcell]); however, [C.E. Pontz] provided no further information regarding the difference. Because [C.E. Pontz] was paid for the 50,000 square feet in the contract plus an additional 20,340 square feet, the Court will grant no further sum for that extra.

Trial Court Opinion, 8/28/2013, at 3-5 (footnotes omitted).

Purcell filed a timely notice of appeal on September 26, 2013. On November 13, 2013, the trial court filed an opinion sur appeal, adopting as dispositive its August 28, 2013, opinion. The court also stated: "[Purcell] filed no post-verdict motions. Any issues not raised in their post-verdict

motion are waived. *See* Pa.R.C.P. 227.1(b)(2)." Opinion *Sur* Appeal, 11/13/2013.

Purcell did not file any post-verdict motions and on November 20, 2013, this Court entered an order, dismissing the appeal and instructed the trial court to allow post-trial motions to be filed *nunc pro tunc*. Purcell filed a post-trial motion on November 27, 2013, requesting relief based on the following reasons:

> 1. The trial court's non-jury verdict against [Purcell] upon consideration of the testimony and evidence presented at trial and in written closing arguments, findings of facts, and conclusions of law, as submitted by the parties, is against the weight of the evidence.
>
> 2. The trial court's verdict in favor of [C.E. Pontz] is not supported by substantial evidence.
>
> 3. The verdict is, in form and substance, inconsistent with the law of the Commonwealth of Pennsylvania.

Purcell's Motion for Post-Trial Relief *Nunc Pro Tunc* Pursuant to Pa.R.C.P. 227.1, 11/27/2013, at unnumbered 4-5. C.E. Pontz filed a response on December 18, 2013.

On July 15, 2014, the trial court entered an order, denying Purcell's post-trial motion. Purcell filed a notice of appeal on July 28, 2014,[2] and a

---

[2] On July 20, 2014, the trial court ordered Purcell to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Purcell filed a concise statement on August 18, 2014. The trial court issued an opinion *sur* appeal pursuant to Pa.R.A.P. 1925(a) on August 28, 2014, again adopting its August 28, 2013, opinion.

*praecipe* to enter judgment on August 26, 2014, as required by Pennsylvania Rule of Appellate Procedure 301, because the trial court's disposition of the its post-verdict motion did not constitute an appealable order. That same day, the trial court entered judgment in favor of C.E. Pontz and against Purcell, on the decision of the court dated August 28, 2013. Consequently, we will treat Purcell's appeal as if it was filed after the entry of judgment, which is the appealable order. **See** Pa.R.A.P. 905(a) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); **McEwing v. Lititz Mut. Ins. Co.**, 77 A.3d 639, 645 (Pa. Super. 2013) (treating parties' appeals from the verdict as having been taken from the final judgment when judgment was entered after the appeals were filed).

We begin with our well-settled standard of review:

> Our review in a non-jury case is limited to "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion."

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa. Super. 2014) (internal citations omitted).

In its first issue, Purcell argues the trial court erred in finding the parties' contract was modified orally, thereby "waiving the requirement of written change orders and consequently binding Purcell to pay for the additional amounts charged for work performed by [C.E.] Pontz outside the [s]cope of [w]ork." Purcell's Brief at 10. Specifically, Purcell states that while a written agreement can be modified by a subsequent oral agreement, it must be based upon valid consideration and proven by clear and convincing evidence. *Id.* However, Purcell avers that where a public contract is involved and there is a procedure regarding work changes and extras, "claims for extras will not be allowed unless these provisions have been strictly followed." *Id.* at 12, *citing* *Scott Township School Dist. Authority v. Branna Constr. Corp.*, 185 A.2d 320 (Pa. 1962). Purcell contends C.E. Pontz did not submit any written change order requests for the alleged additional work completed prior to the completion of the project on August 20, 2007. *Id.* at 13. Purcell points out that C.E. Pontz submitted a change order on or about October 23, 2007, and Purcell did amend the contract based on the requested change order. *Id.* at 13.

Purcell's first issue fails for several reasons. First, we find Purcell's argument is waived to the extent it asserts that because a "public contract" was involved, a stricter procedure regarding additional work is to be applied

pursuant to **Scott**. A review of the record, including the trial transcript, Purcell's proposed findings of fact, conclusions of law, and closing argument, as well as its motion for post-trial relief *nunc pro tunc*, reveals Purcell did not raise this contention before the trial court. Pennsylvania Rule of Appellate Procedure 302 mandates: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Accordingly, because Purcell failed to raise this specific claim before the trial court, we conclude it is waived.

Second, we find Purcell's reliance on **Scott** is misplaced because Purcell fails to explain how the parties' written agreement qualifies as a "public" contract when both entities are private companies. In **Scott**, the contract was between the school district and the contractor for the construction of an elementary school. Here, while the work is being completed at a high school, the contract is between two private companies. The school district is not a party to the contract at issue. Moreover, C.E. Pontz was required to give notice of any additional work to **Purcell**, not to the school district. Therefore, Purcell has not demonstrated **Scott** is controlling in the present matter.[3]

---

[3] Furthermore, we note our sister court has strayed away from the stricter standard as set forth in **Scott**. **See James Corporation v. North Allegheny School District**, 938 A.2d 474, 486-87 (Pa. Commw. 2007) (declining to require "strict and narrow application of the [contract's] notice requirements" where such application "would be out of tune with the

*(Footnote Continued Next Page)*

Lastly, to the extent Purcell argues generally the trial court erred in finding the contract was modified orally, we are guided by the following:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.***, 77 A.3d 1, 6 (Pa. Super. 2013), *quoting* ***Ruby v. Abington Memorial Hospital***, 50 A.3d 128, 132 (Pa. Super. 2012), *appeal denied*, 68 A.3d 909 (Pa. 2013). Moreover,

> [a] written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing. ***Universal Builders, Inc. v. Moon Motor Lodge, Inc.***, 430 Pa. 550, 244 A.2d 10 (1968). An agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing. ***Accu-Weather v. Prospect Communications***, 435 Pa.Super. 93, 644 A.2d 1251 (1994). An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence. ***Pellegrene v. Luther***, 403 Pa. 212, 169 A.2d 298 (1961).

*(Footnote Continued)* ─────────────

language and purpose of the notice provisions" and where the "government is quite aware of the operative facts," and by finding the contractor gave constructive notice, and the school district suffered no prejudice); ***E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.***, 111 A.3d 220 (Pa. Commw. 2015) (same). While we are not bound by the decisions of the Commonwealth Court, these decisions are insightful. ***See Commonwealth v. Thomas***, 814 A.2d 754, 759 n.2 (Pa. Super. 2002).

***Somerset Community Hospital v. Allan B. Mitchell & Associates, Inc.***,
685 A.2d 141, 146 (Pa. Super. 1996).

Here, the record reveals the following: The original contract between Purcell and C.E. Pontz included 50,000 square feet of fine grading, soil supplements, and seeding, in exchange for which C.E. Ponz would receive $3,500.00. The contract also provided, in relevant part, as follows: "This Subcontractor shall perform no additional work without written approval from PURCELL CONSTRUCTION COMPANY. Costs for additional work will not be paid by PURCELL CONSTRUCTION COMPANY without signed change orders." Subcontract Agreement Between Contractor & Subcontractor, 6/9/2006, at 3.

At trial, Ober, the project coordinator for C.E. Pontz, testified she spoke with Kashatus, the project manager for Purcell, regarding the additional work that needed to be completed due to problems that arose during the project at issue. Specifically, she stated:

> [Ober]: Okay. I talked to [Kashatus] and we said -- or I said in order to get this done in a fairly reasonable time, we could either do a change order and – which would take it out another week or two, because until we figure out how much it's gonna cost, until we get it to the office, until we get it to their office and they get back to us, in the meantime we pull equipment off the site and then have to bring it back, I said we could do it that way, I said, but you know, you're looking at another week or so.
>
> …
>
> [C.E. Pontz's counsel]: As a result of your conversation with [Kashatus], what did you do next?

[Ober]: Well, we went ahead and did the seeding with the stipulation that it would be a change order at some time in the future with the idea of another -- in other words, you have an area here that needs to be fixed up and done and at that time I said, well, we'll do it, see what it comes to, we'll submit a change order for that particular area and so on.

[C.E. Pontz's counsel]: Is this an uncommon practice?

[Ober]: Not really. Not when they're trying to get work done.

N.T., 4/29/2013, at 16-17.[4] Ober also indicated that Kashatus would walk around with her at the site, observing the work being completed, and never told her that C.E. Pontz should stop doing the work. *Id.* at 20-22.

However, William Purcell, the owner of Purcell, testified it was never brought to his attention that C.E. Pontz was doing additional work, including erosion removal, that was outside the scope of the contract, but he admitted that he did see them moving rocks. *Id.* at 135-137.

The project was completed in August of 2007, and it included 78,000 square feet of erosion control, dumping loads and removal of rock, additional seeding, soil prep and fertilizer for more than the 50,000 square feet, and costs associated with sod and stone removal at the Fitness Building entrance and chain link fence area.[5] An invoice was sent to Purcell on August 24,

---

[4] However, Ober also testified that, to her knowledge, she did not know if anyone from C.E. Pontz ever submitted a written change order request after certain areas were finished. *Id.* at 27-28.

[5] *See* Trial Court Opinion, 8/28/2013, at 3-4.

2007, indicating that the project cost approximately $49,791.84.  *Id.* at 51-52.

Purcell responded with a letter to C.E. Pontz, dated September 18, 2007, in which Kashatus stated, "Please understand I had authorized CE Pontz to perform these additional items, however, I never realized the costs would be this much!!!"  Exhibit 5, Letter from Kashatus to Kapp, 9/18/2007, at 2.  Although Kashatus did not explicitly reject C.E. Pontz's assessment of additional costs, he made the following request, "Please provide all back-up information requested and forward to our Office as soon as possible.  Time is of the essence because many of the costs for the items you performed are additional work that needs to be passed on to Twin Valley School District and/or Others."  *Id.*

In an October 23, 2007 letter to Kashatus from Ober, C.E. Pontz complied with Kashatus' request, outlining the additional costs by including a breakdown of cost per area regarding Area #1, Area #2, Area #3, Area #4, Area #5, Softball Field (first time), Softball Field (second time), Front Slope, and extras.  *See* Plaintiff's Exhibit 3, Letter from Ober to Kashatus, 10/23/2007.

The following day, Purcell approved certain changes, which amounted to $13,455.56, for a sum total of $16,955.56.  *See* Exhibit 4, Letter from Kashatus to Ober, 10/24/2007.  Areas 1, 2, 4, and 5 were approved and paid by Purcell.  *Id.*  Issues concerning Area 3, the softball fields, front

slope, and extras were denied but purportedly submitted to the school district for approval. *Id.*[6]

Viewing the evidence in a light most favorable to C.E. Pontz as verdict winner, there is clear, precise, and convincing evidence that the parties' conduct clearly demonstrated the intent to waive the requirement that additional work requests be made in writing. Purcell, *via* Kashatus' actions and words, authorized and permitted C.E. Pontz to perform the additional work without submitting a written change order before beginning the tasks. This finding is supported by the fact that Purcell did pay for a portion of the additional work performed, without ever receiving a written change order.[7] Accordingly, we conclude the court did not err in finding Purcell and C.E. Pontz orally modified their contract, effectively waiving the no-written

_____

[6] At trial, William Purcell testified, "I felt that there was some legitimate additional work that [C.E. Pontz] performed over and above the $16,000 that [the school district] approved." N.T., 4/29/2013, at 147. When asked how much he thought C.E. Pontz was due in addition to the $16,000 that was already paid, he said, "Quite truthfully, I would have gone for all of it but [the school district] denied all of it. [The school district] said 16,000 is all that they're going to approve." *Id.* at 148.

[7] Moreover, based on William Purcell's testimony, it appears Purcell would have paid for the remainder of the work if the school district had provided Purcell with the funding.

modification clause of the parties' written contract.[8] Therefore, Purcell's first claim fails.

In its second issue, Purcell claims the trial court erred in finding C.E. Pontz did not breach the contract. Purcell states the parties' contract requires that requested damages must be made promptly and consistent with "the Contract Documents (i.e. the AIA contract between the School and Purcell)." Purcell's Brief at 15. Furthermore, Purcell indicates, "The Contract Documents state the claims must be made within twenty-one (21) days after occurrence of the event giving rise to such claim or within twenty-one (21) days after the [claimant] first recognizes the condition giving rise to the Claim, whichever is later." *Id.* Purcell states C.E. Pontz brought its "claim," as in a lawsuit, against Purcell two years and nine months after the final payment was made. *Id.*

Additionally, Purcell alleges C.E. Pontz was negligent in not properly reviewing the plans and other documents provided by Purcell, which resulted in a significant underestimation between the amount provided by C.E. Pontz as its bid for the project and the costs that were actually incurred. *Id.* at

---

[8] *See Universal Builders*, *supra* (finding an owner cannot refuse to pay on the ground that there was no written amendment to the parties' contract stating that the additional work was authorized under the contract where (1) he requests the contractor complete the additional work, (2) he promises to pay for such extra work, and (3) he watches the work being performed knowing that it is not authorized in writing).

16.    Moreover, Purcell states C.E. Pontz did not attempt to act in a timely manner by arguing:

> The record is clear to demonstrate and support [C.E. Pontz] breached the Contract by:  (i) failing to properly submit a written change order request and instead arbitrarily and capriciously submitting an invoice for fourteen (14) times the Contract amount set forth in the Contract; and (ii) failing to promptly make a formal written claim for damages after the final payment application was submitted to and paid by Purcell; thereby purposefully breaching its duty of good faith and fair dealing in its performance of the Contract.

*Id.* at 17.  Purcell concludes C.E. Pontz was in violation of the contract and should not have been permitted to seek any relief while it "always acted pursuant to the Contract and is entitled to receive compensation as a result" of C.E. Pontz's lawsuit.  *Id.* at 18.

The provisions of the contract that Purcell relies upon are as follows:

> … the Parties also agree that the Subcontractor shall:
>
> …
>
> 4.    Make all claims for extras, for extensions of time and for damage for delays or otherwise, promptly to the Contractor consistent with the Contract Documents.
>
> …
>
> 10a.    Not enter into a separate understanding or agreement of any kind the Subcontractor and the Owner and/or its Architect or Agents relative to any original or extra work contemplated by this Agreement unless the same is first approved in writing by the Contractor.

Subcontract Agreement Between Contractor & Subcontractor, 6/9/2006, at 7; *see also* Purcell's Brief at 14-15.

Like Purcell's first issue, this breach of contract argument fails for several reasons. First, Purcell attempts to conflate "claims for extras" with filing a lawsuit in order to argue that C.E. Pontz did not submit its request for additional costs in a timely manner. However, the language of Paragraph 4 is clear that "claims for extras" does not equate to filing a complaint. Moreover, C.E. Pontz did file its claims for extras in a timely manner where the record demonstrated the project was completed in August of 2007, and C.E. Pontz sent an invoice to Purcell on August 24, 2007, which included the additional costs.

Second, Purcell fails to specifically point out where in the record the 21-day time limit rule is provided for in the Contract Documents. Rather, it merely references an "AIA contract between the School and Purcell." Purcell's Brief at 15. We note that where a party fails to properly develop its argument, with proper citation to the record, the party has waived the claim. **See** Pa.R.A.P. 2119(e).[9] Furthermore, Purcell has failed to explain how a contract between the school and itself applies to a third-party, C.E. Pontz, that is not a party to that contract. Accordingly, Purcell has failed to demonstrate the court erred in finding C.E. Pontz did not breach the contract

---

[9] **See also Commonwealth v. LaCava**, 666 A.2d 221, 234-235 (Pa. 1995) (failure to identify where in the record alleged prejudicial comments were made resulted in waiver).

with respect to its duty of good faith and fair dealing. Therefore, its second issue fails.

In its final argument, Purcell asserts the trial court erred in failing to award attorney's fees to Purcell. Purcell's Brief at 19. Purcell states: "Given the Lower Court erred in failing to find [C.E. Pontz] breached the Contract, it is clear that had this error not been committed the Lower Court would have found the breach; thus, allowing Purcell to receive an award for attorney's fees." *Id.* Moreover, Purcell contends the parties' contract allows it to collect legal fees in the event of a breach of the contract terms by C.E. Pontz. Purcell again avers its prior arguments that C.E. Pontz acted in bad faith and breached the contract by:

> (i) failing to properly submit a written change order request prior to performing any additional work; (ii) and failing to assert a claim for damages in a reasonable time and thereby causing [Purcell] to have to defend itself in the litigation phase and in this appeal and incur attorney's fees as a result of [C.E. Pontz]'s breach of the Contract terms.

*Id.* at 19-20. Additionally, Purcell states C.E. Pontz acted in bad faith "when it presented an invoice to Purcell for an amount fourteen (14) times" the amount of the original contract. *Id.* at 20.

"The general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009), *quoting* *Lucchino v. Commonwealth*, 809 A.2d 264, 267 (Pa. 2002). "The American Rule states that a litigant cannot recover counsel fees

from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established exception." ***Mosaica Academy Charter School v. Com. Dept. of Educ***., 813 A.2d 813, 822 (Pa. 2002). "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding." ***Osial v. Cook***, 803 A.2d 209, 213 (Pa. Super. 2002). ***See also*** 42 Pa.C.S. § 2503(9) ("The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter … (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.").

Because Purcell's argument is based on its earlier assertions that C.E. Pontz breached the contract, we can address this issue in a cursory manner. As indicated above, the trial court found that because there was no breach of contract or breach of duty of good faith in bringing the action on C.E. Pontz's part, no attorney's fees should be awarded. Trial Court Opinion, 8/28/2013, at 3. Based on our disposition with respect to Purcell's first two arguments, and our agreement that there was no breach of contract or fair dealing, Purcell cannot succeed in its claim. Accordingly, we conclude the court did not err in failing to award attorney's fees to Purcell. Therefore, Purcell's final issue is without merit.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2015