# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| F. Zacherl, Inc. | : |
| | : |
| v. | : No. 1196 C.D. 2014 |
| | : Argued: November 17, 2015 |
| Flaherty Mechanical Contractors, LLC, | : |
| West Allegheny School District and | : |
| International Fidelity Insurance | : |
| Company | : |
| | : |
| Appeal of: West Allegheny | : |
| School District | : |

**BEFORE:** HONORABLE MARY HANNAH LEAVITT, Judge[1]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge

**OPINION BY JUDGE BROBSON** **FILED: January 6, 2016**

Appellant West Allegheny School District (the District) appeals from an order of the Court of Common Pleas of Allegheny County (trial court), dated June 26, 2014, granting Appellee F. Zacherl, Inc.'s (Zacherl) motion to mold the verdict to add interest, a penalty, and attorney's fees, and denying the District's motion for post-trial relief. For the reasons discussed below, we affirm in part, and vacate in part, and remand the matter to the trial court for it to determine whether Zacherl is entitled to attorney's fees.

At issue in this matter are claims for payment, a penalty, and attorney's fees by Zacherl, arising from a construction contract for additions and

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

alterations to West Allegheny High School (the Project). International Fidelity Insurance Company (the Surety) issued both payment and performance bonds for the Project. The District selected Flaherty Mechanical Contractors, LLC (Flaherty) as a prime contractor for the Project, pursuant to the Separations Act, Act of May 1, 1913, P.L. 155, *as amended*, 53 P.S. § 1003. The prime contract between the District and Flaherty provided that Flaherty would be responsible for the installation of heating, ventilation, and air conditioning equipment. Flaherty subcontracted the necessary sheet metal work to Zacherl. Pursuant to its contract with the District, Flaherty was responsible for payments to any subcontractors it engaged for portions of its prime contract, including payments to Zacherl. The Surety's payment bond ensured that payments made by the District to Flaherty reached contractors as required by Section 756 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, 24 P.S. § 7-756.[2]

Throughout the course of the work on the Project, the District made various timely payments to Flaherty for work performed, but Flaherty failed to make timely payments to its subcontractors, including Zacherl. On several occasions, Zacherl and other subcontractors requested that the District assist them in getting payments from Flaherty, which the District successfully did. In August 2009, Zacherl again sought assistance from the District regarding non-payment by Flaherty, but this time the District was not able to resolve the non-payment matter. Zacherl issued a notice of claim to the Surety and a notice of

---

[2] Section 756 of the Public School Code was repealed, in part, by Section 10(10) of the Public Works Contractors' Bond Law of 1967 (Public Works Law), Act of December 20, 1967, P.L. 869, 8 P.S. § 200(10), effective January 19, 1968, to the extent it is inconsistent with the Public Works Law, Act of December 20, 1967, P.L. 869, 8 P.S. §§ 191-202.

possible work stoppage to Flaherty. The District, aware that the payment problems were not being corrected, notified Flaherty that payment applications would not be processed without proof of payment to the subcontractors. Ultimately, as a result of the non-payment issues and Flaherty's inability to complete satisfactorily the contracted work, the District terminated Flaherty's prime contract on October 26, 2009. The next day, Flaherty terminated its contract with Zacherl.

Following the termination of the contracts, the parties notified the Surety and sought enforcement of the payment and performance bonds. The Surety issued a "stop payment" order to the District, demanding that no further funds be released under the Flaherty contract without the written consent and direction of the Surety. Shortly thereafter, the Surety notified the District that the District had a duty to mitigate damages. In order to allow work to continue, the Surety stated that it would review expeditiously any requests for funds.

In order not to delay further completion of the Project with the search for a replacement sheet metal contractor, the District requested that Zacherl return to the Project to complete the sheet metal work that it originally agreed to perform under its subcontract with Flaherty. In response, Zacherl sent a letter, dated November 16, 2009, setting forth the sub-contract amount, amount billed to date, amount paid to date, amount due as of that date, amount remaining to bill, and the total unpaid amount. According to that letter, Zacherl calculated that it was owed $288,458.82, for work performed under its contract with Flaherty. By way of a verbal agreement, Zacherl agreed to complete the work on the Project, provided that the District paid it $147,591.90, which represented an amount equal to Zacherl's outstanding June and July invoices. On November 17, 2009, the District issued payment to Zacherl in the amount of $147,591.90. Despite the fact that

3

Zacherl completed the work on the Project, the District made no further payments to Zacherl.

Zacherl filed a civil action in the trial court against Flaherty,[3] the District, and the Surety, asserting breach of contract counts against Flaherty and the District, unjust enrichment counts against Flaherty and the District, counts of anticipatory breach of contract against Flaherty, the District, and the Surety, and a count for breach of payment bond against Flaherty and the Surety. Zacherl sought damages in the amount of $116,263.35 for work it performed under its contract with Flaherty; $59,842.22 for additional work performed after October 26, 2009, pursuant to the verbal agreement between Zacherl and the District, for which it invoiced the District and did not receive payment; and $53,404.27 for work performed on the Project after October 26, 2009, but for which it had not yet billed the District. Zacherl also sought interest, costs, a penalty, and attorney's fees.

The parties submitted motions for summary judgment, and the trial court granted summary judgment in favor of Zacherl. The trial court ordered the Surety to pay Zacherl $116,263.35 for the work performed under Zacherl's contract with Flaherty. The trial court ordered the District to pay Zacherl $113,246.39 for all work that Zacherl performed on the Project subsequent to the District's termination of the prime contract with Flaherty. The trial court also scheduled a hearing to address Zacherl's claim for a penalty, attorney's fees, and interest.

---

[3] Flaherty filed a voluntary petition for bankruptcy on September 24, 2010, in the United States Bankruptcy Court for the Western District of Pennsylvania.

Following the hearing, the trial court concluded that the District acted in bad faith, and the trial court awarded Zacherl an additional $41,130.31 in attorney's fees and interest, pursuant to what is commonly referred to as the Prompt Pay Act, 62 Pa. C.S. §§ 3931-3939. The District filed a notice of appeal.[4]

On appeal to this Court, we reversed the trial court's order to the extent that it granted summary judgment in favor of Zacherl and against the District and remanded the matter to the trial court for further proceedings. Specifically, we held that

> the trial court erred in entering summary judgment based upon breach of contract, where the evidence presented fails to address any of the terms of the verbal agreement between Zacherl and the District, other than that Zacherl agreed to return to the Project to complete the sheet metal work after it received a payment for two earlier invoices for which it had not received payment from Flaherty. In order to demonstrate a breach of contract, a plaintiff must establish: "(1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages resulting from that breach of duty." *Boyd v. Rockwood Area Sch. Dist.*, 907 A.2d 1157, 1165 (Pa. Cmwlth. 2006), *appeal denied*, . . . 919 A.2d 959 ([Pa.] 2007). As the District points out, among the essential terms which have not been considered are the duties of the parties, the means of payment, and the necessity of payment in the event of disputes, including disputes regarding the quality of work performed. The District also contends that a question exists as to whether defects existed in Zacherl's work, such that payment for certain work was not required.

---

[4] The Surety did not appeal the trial court's order directing it to pay Zacherl $116,263.35 for the work performed under Zacherl's contract with Flaherty.

*F. Zacherl, Inc. v. Flaherty Mech. Contractors, LLC, W. Allegheny Sch. Dist. and Int'l Fid. Ins. Co.* (Pa. Cmwlth., Nos. 1904 C.D. 2011 & 530 C.D. 2012, filed May 6, 2013) slip op. at 12-13 (*Zacherl I*).  We also determined that the trial court erred in applying the Prompt Pay Act as the basis for awarding a penalty and attorney's fees against the District.  *Id.* at 9.

On remand, the trial court held a jury trial on Zacherl's breach of contract and unjust enrichment claims against the District.  The jury found in favor of Zacherl on his breach of contract claim and awarded Zacherl damages in the amount of $111,392.18.  Zacherl then filed a motion to mold the verdict and add interest, a penalty, and attorney's fees.  The District filed a motion for post-trial relief requesting judgment notwithstanding the verdict and/or a new trial.  The trial court denied the District's motion and granted Zacherl's motion, thereby awarding Zacherl interest in the amount of $28,278.25, attorney's fees in the amount of $110,755.00, and costs in the amount of $2,332.30.

On appeal to this Court, the District argues that the trial court erred as a matter of law and/or abused its discretion by:  (1) concluding that Section 508 of the Public School Code[5] did not apply to Zacherl's oral contract; (2) refusing to issue a jury instruction about Section 508 of the Public School Code; (3) denying the District's motion for judgment notwithstanding the verdict because there was insufficient evidence to establish the terms of the oral contract; (4) refusing to issue a jury instruction regarding proof of the contract elements as described by this Court in *Zacherl I*; (5) concluding that the District acted in bad faith and thereby

---

[5] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5-508.

6

awarding attorney's fees to Zacherl; and (6) excluding some of the District's proffered exhibits as hearsay.

## I.    Section 508 of the Public School Code

The District first argues that Section 508 of the Public School Code applies to Zacherl's oral contract, and, therefore, the oral contract was null and void.[6, 7]  Section 508 of the Public School Code provides, in pertinent part:

[6] As this is a purely legal question, our standard of review is de novo.  *Dep't of Envtl. Prot. v. Cumberland Coal Res., LP*, 102 A.3d 962, 970 (Pa. 2014).

[7] Zacherl asserts that the trial court properly concluded that the District waived the issue of whether the parties' oral contract was illegal by not pleading the defense prior to trial.  In reaching this conclusion, the trial court relied upon Pa. R.C.P. No. 1032, relating to waiver of defenses, which provides, in part, that "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except" certain specified defenses not applicable to this matter and "*any other nonwaivable defense or objection*." (Emphasis added; R.R. at 171.)  The District responds that it raised this issue prior to trial, and it was not required to plead that the oral contract was illegal under Section 508.  The District maintains that illegality of a contract is a nonwaivable defense.  There is support for the District's argument that it did not waive this defense.

In *American Association of Meat Processors v. Casualty Reciprocal Exchange*, 588 A.2d 491 (Pa. 1991), our Supreme Court concluded that an appellant, an interinsurance group, had not waived the defense of illegality of a contract by not raising the issue until post-trial motions, *where the court of common pleas had an opportunity to address the merits* and the alleged oral agreement would violate a statute and was against public policy.  Our Supreme Court explained:

> [T]he general rule [is] that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void.  Where a contract is found to be against public policy "it cannot, under any circumstances, be made the basis of a cause of action.  The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them." . . . [W]henever it appears that the enforcement of a contract would violate public policy the court should refuse to proceed in an action based solely upon it, and should dismiss the proceedings of its own motion.

*Am. Ass'n of Meat Processors*, 588 A.2d at 495-96 (last two alterations in original) (quoting *Dippel v. Brunozzi*, 74 A.2d 112, 114-15 (Pa. 1950)).  The Supreme Court further explained:

**(Footnote continued on next page…)**

7

The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to . . . :

. . . .

Enter[] into contracts of any kind . . . where the amount involved exceeds one hundred dollars ($100).

. . . .

Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable.

_____

**(continued…)**

The illegality of a contract is therefore a question not entirely controlled by the rules of pleading; whenever it appears that the enforcement of a contract would violate public policy, the court should dismiss the proceedings of its own motion. . . . [T]he courts of this Commonwealth will not be used to enforce contracts which violate public policy; such contracts are void and the law will have nothing to do with them.

*Id.* at 496.

Notwithstanding the above, our Court in *John Spearly Construction, Inc. v. Penns Valley Area School District*, 121 A.3d 593 (Pa. Cmwlth. 2015), concluded that a school district had waived its argument that Section 508 of the Public School Code applied to a construction contract between the school district and a contractor. In concluding that the school district had waived the issue, we based our decision on the fact that the school district "did not raise it during trial or raise it with sufficient clarity in its post-trial motion to fairly put the trial court on notice to address the issue." *John Spearly Const.*, 121 A.3d at 610.

Here, although the District did not plead that the oral contract was illegal under Section 508 of the Public School Code, it raised the issue during the course of the trial. Thus, the trial court had an opportunity to address the merits of the defense, but it chose not to do so. If the District were correct in its argument that enforcement of its oral contract would be illegal under Section 508 of the Public School Code, then public policy concerns would be implicated. For those reasons, we conclude that the District did not waive the defense of illegality of contract, and we will address it here.

8

Section 508 applies to oral contracts as well as written contracts. *See Rudolph v. Albert Gallatin Sch. Dist.*, 431 A.2d 1171, 1172 n.3 (Pa. Cmwlth. 1981) (noting plaintiff had to establish both validity of oral contract and contract's approval by majority of school board). Thus, "[p]ersons relying on agreements with an agent of the school district without first obtaining approval by a vote of the majority of the members at a public meeting do so at their peril." *Berkheimer Assocs. ex rel. N. Coventry Twp. v. Norco Motors*, 842 A.2d 966, 971 (Pa. Cmwlth.), *appeal denied*, 860 A.2d 125 (Pa. 2004).

This Court, however, has held that Section 508 of the Public School Code will not bar a contractor's claim for payment of additional work where that work was part of an already-approved contract. *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474, 487 & n.12 (Pa. Cmwlth. 2007). In *East Coast Paving & Sealcoating, Inc. v. North Allegheny School District*, 111 A.3d 220, 229 (Pa. Cmwlth. 2015), this Court rejected the school district's argument that Section 508 of the Public School Code precluded the contractor, East Coast Paving, from receiving payment for additional work, explaining that "[t]he School Board approved the paving project and its completion by East Coast [Paving], and that is all that was required by Section 508." *Id.* Zacherl argues, and we agree, that separate school board approval of Zacherl's oral contract was unnecessary because the oral contract was for work already approved by the school board. Furthermore, we note that the District's prime contract with Flaherty required Flaherty to submit to the District the names of its subcontractors, which the District was then obligated to respond to by "stating whether or not the [District] . . . , after due investigation, has reasonable objection to any such proposed [subcontractor]. Failure of the [District] . . . to reply promptly shall constitute notice of no

9

reasonable objection." (Section 5.2.1 of the Supplementary Conditions attached to the prime contract; Reproduced Record (R.R.) 515). The prime contract also prohibited Flaherty from contracting with a proposed subcontractor to which the District made a reasonable and timely objection. (Section 5.2.2 of the prime contract; R.R. 474). Thus, the work covered by Zacherl's oral contract was not only part of an already-approved project, Zacherl's performance of the work was also approved by the District. Because approval of the project and its completion by Zacherl was all that was required, Zacherl's claim is not barred by Section 508.[8] *See East Coast Paving*, 111 A.3d at 229.

## II. Judgment Notwithstanding the Verdict

The District next argues that the trial court erred in denying the District's post-trial motion for judgment notwithstanding the verdict because there was insufficient evidence to establish the essential terms of the oral contract. Judgment notwithstanding the verdict should be granted "only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Hazleton Area Sch. Dist. v. Krasnoff*, 672 A.2d 858, 861 n.4 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 548 (Pa. 1996). On review of an order denying judgment notwithstanding the verdict, this Court must determine whether there was sufficient competent evidence to sustain the verdict. *Id.* "[T]he evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and

---

[8] Because we have concluded that Section 508 of the Public School Code does not apply, we need not address the District's argument that the trial court erred in refusing to include a jury instruction on Section 508.

10

any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992).

The crux of the District's argument appears to be that it never agreed to pay Zacherl for the work it performed after the termination of Flaherty as the prime contractor. It disputes Zacherl's contention that Zacherl had an oral contract with the District to perform the post-October 26, 2009 work and that the terms of the oral contract were based upon the terms of its contract with Flaherty and subject to the terms of the prime contract. The District also appears to argue that Zacherl could not cite the terms of the prime contract as the terms of its oral contract, because the prime contract expressly provides that it cannot be modified by verbal agreement and the prime contract was null and void and cancelled on October 26, 2009. In other words, the District appears to be arguing that because Zacherl acknowledges that it is not a party to the prime contract between the District and Flaherty, which Zacherl also acknowledges was no longer in effect for post-October 26, 2009 work, Zacherl cannot rely upon the prime contract to establish the essential terms of its oral contract with the District. Instead, as instructed by this Court in *Zacherl I*, the District argues that Zacherl was required at trial to prove the terms of its oral contract—in particular, the terms of payment, given that the District's main contention is that it was not the entity responsible for paying Zacherl. The District contends that Zacherl did not establish the terms of its oral contract, and, therefore, the trial court should have granted the District's motion for judgment notwithstanding the verdict.

To begin, the District mischaracterizes Zacherl's position regarding the prime contract. Zacherl does not contend that the prime contract between the District and Flaherty was still in effect or that it had been modified to provide that

11

Zacherl was performing work pursuant to that contract.  Rather, Zacherl's position is that, subsequent to the District's termination of the prime contract with Flaherty, it agreed to perform the same work *for the District* that it had previously agreed to perform under its contract with Flaherty for the same money and under the same terms, which Zacherl did.  In other words, Zacherl agreed to perform the same work specified in the prime contract for the same amount agreed to under its contract with Flaherty.[9]

During the trial, Michael Zacherl testified on behalf of Zacherl.  He testified that on November 13, 2012, Brian Kilgus, acting as the construction manager for the District's project, telephoned Mr. Zacherl to request that Zacherl return to the site.  (R.R. 259, 263.)  In a responsive email, Mr. Zacherl listed what Zacherl would need in order to return to the site, including payment of invoices for June and July totaling $147,000.  (R.R. 263-64.)  He explained that he had already submitted a bonding company claim for August and September, and he was unsure whether the District or Surety was going to pay those claims.  (R.R. 264.)  Mr. Kilgus forwarded this email to various individuals, including the District's solicitor and attorney.  (R.R. 265-66.)  On November 16, 2012, Mr. Zacherl received a telephone call from Mr. Kilgus, wherein Mr. Kilgus stated that the District was willing to have Zacherl finish the project, but Zacherl would need to

---

[9] In addition, we note that the District previously stipulated to the existence of an oral contract.  The District appears to argue that the terms of its contract consisted of Zacherl agreeing to return to the site to complete the remaining work in exchange for payment for work already performed with no promise of being paid for the additional work to be performed.  The District is not contending that the Surety is the party that contracted with Zacherl and, therefore, should be the party to pay.  In fact, Zacherl has no contract with the Surety.

12

provide "an affidavit stating how much is owed, how much is billed, how much is to be billed." (R.R. 266-67.) Mr. Kilgus also stated that Zacherl would get paid the $147,000. (R.R. 267.) Mr. Zacherl testified that both he and Mr. Kilgus understood that they had arrived at an agreement with respect to past due work and future work. (*Id.*)

> Mr. Zacherl identified Plaintiff's Exhibit 15 as
>
> an affidavit that was requested to be returned in showing exactly how much [Zacherl's] subcontract was. How much [Zacherl] billed to date. How much [Zacherl] had been paid to date. How much was due; how much was remaining to bill on the contract and how much was unpaid on [Zacherl's] contract to the end.

(*Id.*) The District requested that the affidavit be notarized and that Mr. Zacherl provide the affidavit to the District when he picked up the check from the District, which he did. (R.R. 268-69.) The District then gave Mr. Zacherl a check for $147,000. (R.R. 269.) Zacherl returned to work on November 17 or 18, 2012. (R.R. 270.)

Mr. Zacherl testified that when Zacherl returned to work in November, it performed the exact same work as it would have done before the termination of Flaherty. (R.R. 271.) Zacherl submitted four invoices to Mr. Kilgus for post-October 26 work and sent copies of the invoices directly to the District "due to the situation." (R.R. 271-79.) Zacherl never received questions as to why it was submitting invoices to the District, and no one ever informed it that the work was unauthorized or was not pursuant to a contract with the District. (*Id.*) The District never paid the four invoices totaling $113,000 nor did it call into question the work performed. (*Id.*)

13

On cross-examination, when asked about the existence of a contract memorializing the terms of the agreement, Mr. Zacherl testified that the affidavit proves what Zacherl "was going to bill [the District] and it says to be billed as completion progresses, so . . . it substantiates exactly what our agreement is." (R.R. 282.) When asked if Zacherl would have returned to the job if he had realized that it would not be paid, he testified:

> No. Why would I go back and do this job and spend another hundred thousand dollars of my money finishing the job when I wasn't going to get paid. Of course it was understood that I was going to get paid the remaining [$]113,000 of my contract.

(R.R. 296.)

In denying the District's motion for post-trial relief seeking judgment notwithstanding the verdict, the trial court explained:

> [T]he verbal contract between Zacherl and the . . . District was for Zacherl to complete the remaining sheet metal work on the Project. This work was to be performed pursuant to the original specifications and terms agreed to between Zacherl and Flaherty, and subject [to] the terms of Flaherty's prime contract with the . . . District.
>
> Mr. Zacherl testified credibly about the representations made to him by the . . . District's representatives and the verbal agreement reached with the . . . District with respect to his completion of the sheet metal work. The . . . District clearly enticed Zacherl to return to the Project with the understanding Zacherl would be paid for [its] work under the terms of its subcontract with Flaherty.

(R.R. 173.) Elsewhere in its opinion, the trial court stated that "[t]he parties did not negotiate the scope of the work, price, terms of payment or any other terms . . . . Rather, the agreement was for Zacherl to complete the sheet metal work

14

it was previously retained to perform, all on the same terms and conditions." (R.R. 171.)

Considering the evidence in the light most favorable to Zacherl as the verdict winner, giving Zacherl the benefit of every reasonable inference of fact arising therefrom, and resolving any conflict in the evidence in its favor, we agree with the trial court. The District stipulated to the existence of an oral contract whereby Zacherl would perform the post-October 26, 2009 work, and the District was the only party with which Zacherl had a contractual relationship to perform that work. The cost of the additional work was set forth as part of Zacherl's agreement to return to the job site. Under these circumstances, a reasonable juror could find that the District and Zacherl entered into an oral contract whereby Zacherl would complete the work it previously had contracted to perform in exchange for the District's immediate payment of its outstanding June and July invoices and payment for the remaining work to be done upon its return. This is particularly reasonable because it would seem highly unlikely that the District expected Zacherl to perform the additional work for free. It is also highly unlikely that Zacherl would have agreed to perform the work for free. Moreover, no other entity was a party to the verbal agreement. We conclude, therefore, that there was sufficient competent evidence to sustain the verdict, such that the trial court did not err in denying the District's post-trial motion seeking judgment notwithstanding the verdict.[10]

---

[10] It appears to the Court that the District may have anticipated or expected that the Surety would either reimburse the District for its payment of $147,000 to Zacherl or pay Zacherl on behalf of the District for the post-October 26, 2009 work. Any failure on the part of the Surety, however, does not alter the District's obligations under its oral contract with Zacherl.

15

### III. Jury Instructions

The District also argues that the trial court erred in refusing to issue its requested jury instruction regarding proof of elements of an oral contract, asserting that this Court's opinion in *Zacherl I* required the trial court to do so. At the summary judgment stage of the proceedings, we remanded this case to the trial court on the basis that the "evidence presented fail[ed] to address any of the terms of the verbal agreement between Zacherl and the District," with the exception that "Zacherl agreed to return to the Project to complete the sheet metal work after it received a payment for two earlier invoices for which it had not received payment from Flaherty."[11] *Zacherl I*, slip op. at 12. We essentially concluded that summary judgment was inappropriate because material issues of fact existed regarding the terms of the verbal agreement between the District and Zacherl for the performance of post-October 26, 2009 work.

The District contends that, in light of our directive in *Zacherl I*, the trial court should have instructed the jury pursuant to Pennsylvania Standard Jury Instruction § 19.20, relating to oral contracts, which provides:

> Except in certain situations, an oral contract is just as effective as if the agreement had been reduced to writing. If you find that all the items needed to form a contract are present, *[list elements briefly here or refer to Instruction 19.00, Elements of Contract Action]*, you must find that *[party asserting an oral contract]* has established that

---

[11] We also rejected the District's contention that a genuine issue of material fact existed as to whether its payment of $147,591.90 to Zacherl was for pre-October 26, 2009 work and concluded that the District's argument to the contrary was disingenuous. We specifically agreed with the trial court that no genuine dispute existed that the District's November 17, 2009 payment to Zacherl was for work performed by Zacherl prior to the termination of the prime contract and the District paid the money as an inducement for Zacherl to return to the Project.

16

both parties intended to be bound by the terms of the agreement, which were sufficiently definite to be specifically enforced, and there was mutuality of consideration. The burden of proving the oral contract is on *[party asserting an oral contract]*, and *[party asserting an oral contract]* must prove that the contract was *clear and concise*. You are to consider the conduct of the parties and the surrounding circumstances as to the formation of the contract, the parties' conduct after the formation of the contract, and whether the parties' conduct would be reasonable in light of the alleged contract and the surrounding circumstances. If you find that an oral contract existed in this case, it is irrelevant that the party seeking to enforce the contract did not take steps to obtain a written contract, despite his or her apparent ability and opportunity to do so.

(Last emphasis added.)

Instead, the trial court instructed the jury as follows:

[Zacherl] has the burden of proving its claims since [Zacherl] is alleging an oral contract in this case. It must prove that that contract was *clear and concise*.

. . . .

A contract may be oral or written but to be enforceable, the terms of the contract must *clearly express* what each party intended and expected. If the terms of the agreement are not *definite and certain*, any uncertainty may be clarified by examining the *circumstances surrounding the bargain*.

. . . .

If you find that a *clear and concise* oral contract existed in this case, and it has been breached by the [District] for non-payment to [Zacherl], then [Zacherl] may recover damages.

. . . .

In a civil case such as this one, the party making the claim has the burden of proving those contentions which entitle them to relief. When a party has a burden of proof on a particular issue, their contention on that issue must

17

be established by a fair preponderance of the evidence. The evidence established a contention by the fair preponderance if you're persuaded that it is more probably accurate and true than not.

(R.R. at 438-39, 445, 449 (emphasis added).) The District asserts that the trial court's instructions do not emphasize "the need for specifying the terms of the contract" and is, therefore, inconsistent with our opinion in *Zacherl I*. (Appellant's Br. at 34.)

In *Chicchi v. Southeastern Pennsylvania Transportation Authority*, 727 A.2d 604 (Pa. Cmwlth.), *appeal denied*, 747 A.2d 371 (Pa. 1999), we explained:

> The primary duty of a trial judge in instructing a jury is to clarify the issues so that the jury is able to comprehend the question they are to decide. Where the jury instruction fairly and accurately apprises the jury of the relevant law, a new trial is not warranted. To constitute a reversible error, a jury instruction, when considered in its entirety, must be not only erroneous but also prejudicial to the complaining party.

*Chicchi*, 727 A.2d at 609 (citations omitted). At the outset, we note that the trial court's jury instructions are not inconsistent with the standard jury instruction for oral contracts. The trial court's instruction made clear that Zacherl must "prove that that contract was clear and concise" and may look to the "circumstances surrounding the bargain," which is consistent with the standard instruction relating to oral contracts. (R.R. 438-39.) Moreover, it is not inconsistent with *Zacherl I*, in which we reversed the grant of summary judgment because issues of material fact existed regarding the terms of the verbal agreement, such that those facts would have to be determined by a jury. The jury in this case considered the evidence and made the factual findings that a term of the oral contract included the

18

District paying Zacherl for the post-October 26, 2009 work. For these reasons, the trial court's instructions to the jury were neither erroneous nor prejudicial.

## IV.  Attorney's Fees

The District argues that the trial court erred in finding the District acted in bad faith and awarding attorney's fees to Zacherl.[12]  The trial court awarded $110,755.00 in attorney's fees to Zacherl under Section 2503 of the Judicial Code, 42 Pa. C.S. § 2503, which provides, in pertinent part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> . . . .
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
>
> . . . .
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

The trial court found that "the School District's refusal to pay Zacherl after enticing him to come back to work on the Project constitutes bad faith." (R.R. 175.)  In other words, the trial court's finding of bad faith is based entirely upon the District's behavior prior to the institution of this lawsuit.  This Court, however, has held that a trial court cannot award attorney's fees under Section 2503 of the Judicial Code for behavior predating the lawsuit:

---

[12] We review the trial court's decision to award attorney's fees pursuant to Section 2503 of the Judicial Code for an abuse of discretion. *Maurice A. Nernberg & Assocs. v. Coyne*, 920 A.2d 967, 969 n.3 (Pa. Cmwlth. 2007).

[A]n award for counsel fees under Section 2503 [of the Judicial Code] is meant to compensate the innocent litigant for costs caused by the actions of the opposing party. [Section 2503 of the Judicial Code], by its very terms, is a "taxable costs" provision, thereby relating to the conduct of a party at some point during the litigation process. Thus, activity that occurs before litigation is commenced cannot form the basis for a counsel fee award.

*Carlson v. Ciavarelli*, 100 A.3d 731, 745 (Pa. Cmwlth. 2014) (alterations in original) (citations omitted) (internal quotation marks omitted). Because the trial court relied entirely upon the District's pre-litigation behavior, as opposed to the conduct of the District in commencing the matter or its conduct during the litigation, the trial court applied an incorrect analysis. We, therefore, vacate the trial court's order to the extent that it awarded attorney's fees to Zacherl under Section 2503 of the Judicial Code, and we remand the matter to the trial court so that it may apply the correct analysis to determine whether Zacherl is entitled to attorney's fees under Section 2503 of the Judicial Code.

## V.    Hearsay Objections

Lastly, the District argues that the trial court erred or abused its discretion in excluding, based on hearsay objections, two documents authored by the Surety. At trial, Zacherl objected to the introduction of these documents, contending that they were inadmissible hearsay. The District responded that the documents were not hearsay, because they were not offered for the truth of the matter asserted therein. Rather, they were offered to establish the District's state of mind and should have been ruled admissible. *See Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007) ("Any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay."); *see also Eagle v. Unemployment Comp. Bd. of Review*, 659 A.2d 60, 62 (Pa. Cmwlth. 1995)

(explaining that evidence offered to establish state of mind is not hearsay because it goes to what witness understood and is not offered for truth of its content). The trial court sustained the hearsay objections. (R.R. 294, 313-14, 377.)

One of the documents referred to by the District is a letter dated October 22, 2009, marked as Exhibit "E," from the Surety to the District, asking for information regarding Flaherty's work on the project and demanding that no funds be released *under the District's contract with Flaherty* without the approval of the Surety. (R.R. 557-58.) Another is a letter from the Surety to the District, dated February 9, 2010 (after the District entered into its oral contract with Zacherl), which is marked as Exhibit "L." (R.R. 568-70).

The District contends that the documents detail the interactions between the District and the Surety and set "the foundation for the decisions made by the District regarding Zacherl." (Appellant's Br. at 46.) The District characterizes the documents as evidencing (1) the Surety's involvement regarding continuation of the work and the denial of payments to Zacherl and (2) the Surety's purported assumption of the contract pursuant to the bond agreements. The District contends that the state of mind is relevant to establishing (1) the reason that it acted as it did and (2) that it acted in good faith in pursuing the litigation. Zacherl responds that the District does not deny that Zacherl is entitled to be paid for its work; instead, the District attempts to use these hearsay documents to place the responsibility and blame for non-payment of Zacherl on the Surety.[13]

_____

[13] Zacherl points out that the District, for unexplained reasons, did not file a cross-claim against the Surety, alleging that the Surety was either directly responsible or liable over to Zacherl for the post-October 26, 2009 work.

21

With regard to the District's contention that the documents relate to the District's state of mind and establish that the District did not act in bad faith for purposes of attorney's fees, any failure to admit these documents would constitute harmless error, because we have concluded that the trial court erred in granting attorney's fees on the basis of pre-litigation bad faith. Removing that aspect from the District's argument, we are left to consider whether the documents may be offered to show the District's state of mind regarding why it acted as it did when it entered into the oral contract with Zacherl. Clearly, Exhibit "L," which is a letter authored several weeks after the formation of the oral contract, could not have influenced the District's state of mind at the time of the formation of the contract. That leaves the Court with the remaining question of whether the trial court should have admitted Exhibit "E" on the basis that it was relevant to the District's state of mind as it relates to the formation of the oral contract and, specifically, payment under the oral contract. We simply do not see support for such an argument in the document. We conclude, therefore, that the trial court did not abuse its discretion or err in sustaining Zacherl's hearsay objections to Exhibits "E" and "L."

Accordingly, the order of the trial court is affirmed in part and vacated in part. The order is vacated to the extent that it awarded attorney's fees to Zacherl, and it is affirmed in all other respects. The matter is remanded to the trial court for a new determination as to whether Zacherl is entitled to attorney's fees under Section 2503 of the Judicial Code.


_____
P. KEVIN BROBSON, Judge


22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

F. Zacherl, Inc.               :

                             :

         v.              :    No. 1196 C.D. 2014

                             :

Flaherty Mechanical Contractors, LLC,  :
West Allegheny School District and     :
International Fidelity Insurance        :
Company                          :

                             :

Appeal of: West Allegheny         :
School District                     :

## O R D E R

AND NOW, this 6th day of January, 2016, the order of the Court of Common Pleas of Allegheny County (trial court) is hereby AFFIRMED in part and VACATED in part. The trial court's order is VACATED to the extent that it awarded attorney's fees to F. Zacherl, Inc., and it is AFFIRMED in all other respects. The matter is REMANDED to the trial court for a new determination as to whether F. Zacherl, Inc., is entitled to attorney's fees under Section 2503 of the Judicial Code, 42 Pa. C.S. § 2503.

Jurisdiction relinquished.

---

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

F. Zacherl, Inc.                          :
                                          :
        v.                                : No. 1196 C.D. 2014
                                          : Argued:  November 17, 2015
Flaherty Mechanical Contractors, LLC,     :
West Allegheny School District and        :
International Fidelity Insurance           :
Company                                   :
                                          :
Appeal of:  West Allegheny               :
School District                           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge

CONCURRING OPINION
BY JUDGE LEAVITT                              FILED: January 6, 2016

I join the decision of the panel.  I write separately to address attorney fees under the Prompt Pay Act.

Section 3935 of the Prompt Pay Act authorizes the imposition of penalties and attorney fees where a government agency has "acted in bad faith" by withholding payments owed to a contractor.  Section 3935 states:

> (b)  Attorney fees. – Notwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under this subchapter *may be awarded a reasonable attorney fee* in an amount to be determined by the Board of Claims, court or arbitrator, together with expenses, *if it is determined that the government agency, contractor or subcontractor acted in bad faith.*  An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa. C.S. §3935 (emphasis added). The Prompt Pay Act "level[s] the playing field" between a government agency, which can use its taxing power to fund litigation, and a private contractor, which lacks this resource. *A. Scott Enterprises, Inc. v. City of Allentown*, 102 A.3d 1060, 1070 (Pa. Cmwlth. 2014).

As we noted in *Zacherl I*, (Pa. Cmwlth., Nos. 1904 C.D. 2011 & 530 C.D. 2012, filed May 6, 2013), the Prompt Pay Act "applies to *contracts* entered into by a government agency through competitive sealed bidding or competitive sealed proposals." 62 Pa. C.S. §3901(a) (emphasis added). For the project that generated the instant litigation, the School District contracted with Flaherty Mechanical Contractors, LLC (Flaherty) after a competitive bid required by the Separations Act, Act of May 1, 1913, P.L. 155, *as amended*, 53 P.S. §1003. One of the "contracts" covered by Flaherty's competitive bid was Zacherl's subcontract for the project's sheet metal work. Stated otherwise, the price for Zacherl's work was produced in a competitive bid. When Flaherty did not pay its invoices, Zacherl left the job. It returned at the request of the School District that Zacherl complete the work under the terms to which it had agreed with Flaherty.

Litigation is the new sport of kings. The damages awarded to Zacherl will not make Zacherl whole because the monies will be used to pay attorney fees and costs. The Prompt Pay Act was designed to address this unfortunate result. The School District did not bid the specific contract with Zacherl, as was required by the Separations Act, and I do not believe that government agencies should be allowed to use their own failure to comply with statutory requirements to their advantage. In *James Corp. v. North Allegheny School District*, 938 A.2d 474 (Pa. Cmwlth. 2007), we refused to allow a school district to exploit its own failure to follow a statutory requirement to deprive a contractor of payment for his work.

MHL-2

*Zacherl I* is the law of the case and, thus, I join the panel.

_____
MARY HANNAH LEAVITT, Judge