J-S44015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| A.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.D. AND J.C. | : | No. 2364 EDA 2025 |
| | : | |

Appeal from the Order Entered August 13, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2024-60246

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                      **FILED MARCH 13, 2026**

A.C. (Stepmother[1]), proceeding *pro se*, appeals from the  order, entered in the Court of Common Pleas of Bucks County, sustaining H.D.'s (Mother) preliminary objections and denying and dismissing Stepmother's custody petition with prejudice.  After review, we affirm.

This matter was initiated when Stepmother filed a custody petition seeking shared legal and primary physical custody of K.D. (DOB 6/12) and A.D. (DOB 10/14) (Children) on February 9, 2024, pursuant to 23 Pa.C.S.A. §

---

[1] While Stepmother and J.C. (Father) separated in 2022, Stepmother testified at the August 8, 2025 hearing that they remained married.  ***See*** N.T. Hearing, 8/8/25, at 7.

5324(2).[2]  Stepmother lived with the Children for a period of at least 3 years, from 2019 through 2022.

On August 4, 2025, Mother filed preliminary objections to Stepmother's complaint in custody and raised the issue of Stepmother's standing.  The trial court held a hearing on August 8, 2025, at which time the trial court permitted Stepmother, proceeding *pro se*, to speak on the record regarding her relationship to Children.  She stated the following:

> I have remained a consistent stepparent to [Children], despite being blocked at every avenue.  I was present for their first days of school.  I was there for regular pick[-]ups from school, doctors' visits, IEP evaluations, birthdays, holidays, extracurricular activities, and day-to-day care.
>
> I provided emotional support by virtual schooling them during COVID; emotional care, like writing letters from the tooth fairy; taking them to birthday parties and trick-or-treating, sometimes even with [Mother] present.  I was the one in our household that made Christmas happen for all seven kids[3] each year, and I continue to do so, even after the separation of [Father] and I.
>
> Over the years, I've received personalized cards from [Children] and ongoing public affirmation of their love toward me and towards their siblings.
>
> I've been active in their lives since 2016, when their father and I first began dating.  I've supported their health and education.  I've made dinners for them.  I've had fun with them.  I've kissed boo-boos, and I've loved them exactly how I love my biological children.

---

[2] 23 Pa.C.S.A. § 5324(2) provides that an individual "who stands *in loco parentis* to the child" may file an action for physical or legal custody.

[3] Stepmother has four children of her own, two of whom are half-siblings to Children and two of whom are step-siblings to Children.

I've had love – I've had [Children]'s love, security, and trust. They call me ["]Mom [A."] and even asked to call me ["]Mom["], and often did.

N.T. Hearing, 8/8/25, at 35-36.

Stepmother marked and identified several exhibits but ultimately failed to move to admit them into the record. *Id.* at 102-03. After the close of testimony,[4] on the record, the trial court found that Stepmother did not stand *in loco parentis* to the Children, granted Mother's preliminary objections, and denied and dismissed Stepmother's custody petitions. *Id.* at 103.

Stepmother filed a motion for reconsideration on August 11, 2025. On August 13, 2025, the trial court issued two orders. The first reduced to writing the oral order it announced at the hearing, granted Mother's preliminary objections as to Stepmother's standing, and denied and dismissed Stepmother's custody petition with prejudice. The other denied Stepmother's motion for reconsideration. Stepmother filed a timely notice of appeal, and both Stepmother and the trial court have complied with Pa.R.A.P. 1925.

Stepmother raises the following issues for our review:

1. Whether the trial court erred by sustaining preliminary objections filed sixteen months after service in violation of Pa.R.C.P. 1915.5(c)'s mandatory waiver provision, and by entering a written order dismissing [Stepmother]'s petition ["]with prejudice["] when that language was never stated in the court's oral ruling?

2. Whether the trial court violated [Stepmother]'s constitutional due-process rights as a self-represented, indigent, domestic-

_____

[4] Father was not present to the testify at the hearing. The testimony indicates that the Children have not been in Father's care since November of 2022, and that Father resides in Texas. *See* N.T. Hearing, *supra*, at 21, 93.

violence survivor by excluding properly marked and identified exhibits used throughout the hearing, thereby preventing full evidentiary review of [Stepmother]'s *in loco parentis* claim, in violation of **Williams v. Yohe,** 131 A.3d 1036 (Pa. Super. 2016), and the fairness principles codified in Kayden's Law (Act 8 of 2024; 23 Pa.C.S.[A]. §§ 5328 and 5329.1)?

3. Whether the trial court's opinion relied on factual mischaracterizations unsupported by the record—including fabricated references to the children's alleged "dislike" of [Stepmother] and improper reliance on post-separation conduct—in contravention of **C.G. v. J.H.**, 193 A.3d 891 (Pa. 2018)?

4. Whether the trial court erred as a matter of law by denying *in loco parentis* standing despite unrebutted evidence of six years of cohabitation, daily caregiving, and parental acquiescence, contrary to **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001)?

5. Whether the cumulative effect of procedural and substantive errors—including acceptance of waived objections, exclusion of [Stepmother]'s exhibits, misapplication of standing law, judicial bias toward a *pro se* litigant, and failure to apply Kayden's Law's trauma-informed protections—constituted custody gamesmanship and a systemic breakdown of due process, requiring reversal and remand for recognition of standing and a full custody hearing on the merits in compliance with state and federal constitutional safeguards?

6. Whether the trial court's conduct—including dismissive treatment of Stepmother's claims, exclusion of marked exhibits, refusal to apply trauma-informed custody procedures, and failure to ensure an impartial forum—violated [Stepmother]'s due process rights and requires reassignment to a neutral judge on remand?

7. Whether the trial court erred by engaging in a best-interest analysis and issuing findings about the children's needs after denying Stepmother standing, contrary to Pennsylvania law requiring standing to be decided first?

Appellant's Brief, at 6-8 (reordered for ease of disposition; footnote omitted).

Stepmother's first issue consists of two arguments: (1) that the trial court erred by sustaining Mother's preliminary objections sixteen months after

Stepmother filed her custody petition; and (2) that the trial court erred by dismissing Stepmother's petition with prejudice after not stating on the record that dismissal would be with prejudice.

Stepmother avers that Pennsylvania Rule of Civil Procedure 1915.5(a) requires a challenge to standing or jurisdiction in a custody action be brought within 20 days of service of the complaint. According to Stepmother, because Mother filed her preliminary objections more than 20 days after the filing of her custody petition, these claims are "waived forever." Appellant's Brief, at 20. However, Stepmother has waived this argument by failing to raise it with the trial court and by failing to raise it in her Rule 1925(b) statement. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or raised in accordance with the provisions of this paragraph (b)(4) are waived."). Therefore, Stepmother's argument regarding the untimeliness of Mother's preliminary objections is waived.[5]

_____

[5] Stepmother's argument, if not waived, is meritless. Stepmother claims Rule 1915.5 contains language that it does not. *Compare* Appellant's Brief at 18-19 ("Rule 1915.5(c) is mandatory and absolute: 'Unless preliminary objections are filed within the time provided by subdivision (a), they shall be deemed to be waived'"), *with* Pa.R.C.P. 1915.5(c) ("There shall be no discovery unless authorized by special order of court."). Further, the cases Stepmother cites in support of a 20-day deadline were decided prior to the 2020 amendment to Rule 1915.5(c). *See* Appellant's Brief, at 19 (citing *M.G. v. L.D.*, 155 A.3d 1083, 1087 (Pa. Super. 2017) and *M.O. v. J.T.R.*, 85 A.3d 1058, 1062 (Pa. Super. 2014)). Prior to 2020, Pa.R.C.P. 1915.5 included a
*(Footnote Continued Next Page)*

Turning to the second argument contained in Stepmother's first issue, Stepmother claims that the trial court erred when it entered its order dismissing her petition with prejudice because, in doing so, it materially departed from its oral ruling, wherein it did not specify whether dismissal would be with or without prejudice. **See** Appellant's Brief, at 22-23. Further, Stepmother claims that dismissals for lack of standing are not adjudications on the merits and, therefore, must be without prejudice. **See id.** at 23 (citing **Commonwealth v. Parker**, 152 A.3d 309 (Pa. Super. 2016)).

Stepmother has likewise failed to preserve this issue by raising it with the trial court prior to her appeal. **See** Pa.R.A.P. 302; **see also id.** at 1925(b)(4)(vii). Stepmother did not raise this argument in her motion for reconsideration or in her Rule 1925(b) statement. Therefore, the claim is waived on appeal.

In her second issue, Stepmother argues that the trial court erred in excluding the exhibits she marked and identified throughout the custody hearing. Stepmother avers that, because Mother's exhibits were admitted while hers were not where she "believed that marking constituted admission[,]" she was "deprived of justice through procedural confusion." Appellant's Brief, at 35-36.

---

20-day deadline; the current version, effective since October 1, 2020, does not. **Compare** Pa.R.C.P. 1915.5(a) (current version), **with** Pa.R.C.P. 1915.5(a) (prior version effective until Sept. 30, 2020).

Stepmother has, however, waived this issue for failure to properly develop it. *See* Pa.R.A.P 2119(a) (argument section of brief must contain "discussion and citation of authorities as are deemed pertinent"). Stepmother cites only two cases in support of her argument: *Williams v. Yohe*, 131 A.3d 1036 (Pa. Super. 2016) and *In re Ullman*, 995 A.2d 1207 (Pa. Super. 2010). We have determined that *Williams v. Yohe*, 131 A.3d 1036 (Pa. Super. 2016) does not exist; there is no case at that reporter citation, and our search of the parties' names only uncovered a case by the name of *Danielle Marie Yohe v. Michael Craig Williams* from the Tenth Judicial District in Florida. While *In re Ullman* does exist, Stepmother cites it for a proposition for which it does not stand. Stepmother cites it in support of the proposition that "[w]hen a misunderstanding—not neglect—causes a procedural omission, courts must act to prevent prejudice." Appellant's Brief, at 36. *In re Ullman*, however, contains no discussion of a procedural mistake being overlooked when caused by a misunderstanding as opposed to neglect. *See generally*, *id.*[6] Therefore,

_____

[6] Based upon our review of Stepmother's brief and the cases cited therein, we suspect she used generative artificial intelligence in drafting it. *See Saber v. Navy Federal Credit Union*, 2026 WL 194332, at *3 n.4 (Pa. Super. Jan. 14, 2026) (discussing generative artificial intelligence "hallucinations," wherein program makes up cases that do not exist). While we may liberally construe materials filed by *pro se* litigants, they are still subject to the same rules as represented litigants. *See Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa 2014). Therefore, all litigants using generative artificial intelligence must ensure that the citations in their briefs are to real cases, or they risk waiving them for failure to cite to "pertinent" authority. *See* Pa.R.A.P. 2119(a).

given the lack of proper discussion and citation of authority, this argument, too, is waived.

Stepmother's third and fourth issues, which we analyze together for ease of disposition, both challenge the trial court's standing determination. Stepmother argues, *inter alia*, that the trial court erred when it ignored or gave insufficient weight to her testimony showing she assumed a parental role toward the Children and discharged paren tal duties, improperly relied on post-separation conduct, and applied the wrong legal standard. **See** Appellant's Brief, at 27-34, 36-38, 44-49.

Our standard of review is as follows:

> Issues of standing generally raise pure questions of law for which we employ *de novo* review of a trial court's decision. [A] challenge to asserted *in loco parentis* status in a particular context typically involves a fact-intensive inquiry[] and may implicate mixed questions of law and fact. Where factual findings and credibility determinations are at issue, we will accept them insofar as they are supported by the record.

**See Int. of K.N.L.**, 284 A.3d 121, 132 (Pa. 2022) (internal citations omitted).

At a basic level, "[s]tanding relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant to be adversely affected, or aggrieved, in some way." **Id.** at 136. Traditionally, this requirement is met "where an individual demonstrates [that she] has a substantial interest in the subject matter of the litigation that [is] direct and immediate, rather than remote, and which distinguishes [her] interest from the common interest of other citizens." **Id.** (internal quotations omitted).

- 8 -

Pennsylvania statute confers standing to seek custody upon individuals who stand *in loco parentis* to a child. **See Hale v. Hale**, 345 A.3d 1234, 1239 (Pa. Super. 2025); **see also** 23 Pa.C.S.A. § 5324(2). The phrase *in loco parentis* specifically "refers to a person who puts [herself] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." **Int. of K.N.L.**, 284 A.3d at 144. The Pennsylvania Supreme Court further explained that "[t]he foundational elements of *in loco parentis* status, upon which all other considerations may rise or fall, include the assumption of a parental role, and the discharge of parental duties." **Id.** (citing **C.G. v. J.H.**, 193 A.3d at 907–08). The assumption of the parental role, however, must originate with a legal parent's assent, be it through encouragement or acquiescence. **Int. of K.N.L.**, 284 A.3d at 144. The time frame relevant to an *in loco parentis* analysis is "when the party developed the relationship with the child with the acquiescence of encouragement of the natural parent." **Id.** at 145. While the test is "stringent" to "prevent intrusion into fundamental parental rights" by "those who are merely strangers," our Supreme Court has cautioned it must not be interpreted "so rigidly or absolutely as to deny one acting *in loco parentis* an opportunity to be heard[.]" **Id.** at 138–39. With those principles in mind, we turn to the merits of Stepmother's position.

Applying the foregoing analysis here, we conclude the trial court did not err in its standing determination. The trial court considered the evidence put forward by Stepmother insufficient, explaining that Stepmother "failed to

provide clear or specific examples[,] such as managing the Children's daily routines or participating in significant decision-making[,]" that Stepmother's statements "lack[ed] the necessary specificity and do not reflect the level of parental responsibility required[,]" and that Stepmother had not "offered insights into how she co-parented with Father or what specific role she played alongside him in the [Children's] upbringing." Trial Court Opinion, 9/30/25, at 10.

Based upon a comprehensive review of the record, and mindful of the appropriate standard and scope of review, we conclude that the trial court correctly determined Stepmother did not stand *in loco parentis* to the Children. While Stepmother's testimony indicates she played a significant role in the Children's lives during her time with them, it is insufficient to show that she assumed the role of a parent. **See Hale**, 345 A.3d at 1240 (finding *in loco parentis* status where petitioner "undertook numerous shared parental obligations" such as providing "independent input regarding [child's] medical providers, education, and general welfare"); **see also A.C. v. E.K.**, 331 A.3d 939, 947 (Pa. Super. 2025) (petitioner seeking *in loco parentis* status failed to establish that he and child's biological mother lived as a "family unit" and co-parented). Therefore, we find Stepmother's third and fourth issues to be without merit.

Stepmother's fifth and sixth issues both claim that the trial court took various actions that, when taken together, violated her right to due process. **See** Appellant's Brief, at 17, 20, 24-25, 41, 49, 53-61. These issues are

waived, however, due to Stepmother's failure to cite controlling authority. *See* Pa.R.A.P. 2119(a). Here, again, Stepmother cites numerous cases which do not support the proposition she cites them for. For example, Stepmother cites *Commonwealth v. Roney*, 79 A.3d 595 (Pa. 2013) and *Commonwealth v. Paddy*, 15 A.3d 431 (Pa. 2011) in support of the position that the cumulative effect of a trial court's errors can constitute a violation of due process, yet neither *Roney* nor *Paddy* provide support, even implicitly, for such a position. *See* Appellant's Brief at 17, 20, 25, 41, and 61. Further, Stepmother again cites to *Williams v. Yohe*, a case which does not exist. *See* Appellant's Brief, at 41 ("As this [C]ourt reaffirmed in *Williams v. Yohe*, 131 A.3d 1036 (Pa. Super 2016), '[p]rocedural equality is the cornerstone of due process.'"). In addition to *Yohe*, Stepmother points to *Commonwealth v. Lyons*, 574 Pa. 373 (2003), which also does not exist.[7] Therefore, Stepmother's arguments regarding the trial court's alleged cumulative errors are waived.

Stepmother's final argument is that the trial court erred by making a best-interest determination after finding that Stepmother did not have standing. *See* Appellant's Brief, at 50-53. While the trial court did briefly opine on whether awarding Stepmother a form of custody would be in the Children's best interests, because it had already determined that Stepmother

---

[7] While we found three Pennsylvania cases decided in 2003 with the caption *Commonwealth v. Lyons*, none stand for the proposition Stepmother cites it for or appear at the reporter citation she provides.

lacked standing, and because of our affirmance of that determination, the trial court's best-interest analysis is superfluous and, at most, mere *dicta*. **See** Trial Court Opinion, 8/8/25, at 14. This issue, therefore, is also without merit.

Accordingly, as all of Stepmother's issues are either waived or without merit, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2026